438 So.2d 815 (1983)
DEPARTMENT OF INSURANCE, State of Florida, et al., Appellants,
v.
SOUTHEAST VOLUSIA HOSPITAL DISTRICT, et al., Appellees.
FLORIDA PATIENT'S COMPENSATION FUND, et al., Appellants,
v.
SOUTHEAST VOLUSIA HOSPITAL DISTRICT, et al., Appellees.
Nos. 63698, 63699 and 63751.
Supreme Court of Florida.
September 15, 1983.
Rehearing Denied November 4, 1983.
*817 David A. Yon, Legal Division, Dept. of Ins., Tallahassee, and Talbot D'Alemberte and Jeffrey B. Crockett of Steel, Hector & Davis, Miami, and Richard B. Collins and Samuel R. Neel, III of Perkins & Collins, Tallahassee, for appellants.
Ben H. Wilkinson, Neil H. Butler and Cathi C. O'Halloran of Pennington, Wilkinson & Dunlap, Tallahassee, Adams, Hill & Fulford, Orlando, Peter J. Winders and Jacob D. Varn of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, John D. Buchanan, Jr., of Henry, Buchanan, Mick & English, Tallahassee, Richard B. Adams, Jr. of Adams, Ward, Hunter, Angones & Adams, Miami, and Scott R. McMillen of Mateer, Harbert, Frey, Bechtel & Phalin, Orlando, for appellees.
Robyn Greene of Greene & Cooper, and Rosenblatt, Greene & Arnowitz, Miami, amicus curiae for Michael Rae.
Robert L. Shevin, Jeffrey M. Weissman, Ronald L. Book and Gary S. Phillips of Sparber, Shevin, Rosen, Shapo & Heilbronner, Miami, amicus curiae for Florida Physicians United For Health Cost Reform.
Larry Klein, West Palm Beach, amicus curiae for The Academy of Florida Trial Lawyers.
Bruce Culpepper and F. Townsend Hawkes of Culpepper, Beatty & Turner, Tallahassee, amicus curiae for Florida Medical Malpractice Joint Underwriting Association.
Charles H. Baumberger of Rossman & Baumberger, Miami, amicus curiae for Daisey Lopez.
Robert D. Peltz of Rossman & Baumberger, Miami, amicus curiae for Dade County Trial Lawyers.
ADKINS, Justice.
This cause is before this Court on a direct appeal from a decision of the First District Court of Appeal in Southeast Volusia Hospital District v. State of Florida, Department of Insurance, 432 So.2d 592 (Fla. 1st DCA 1983), which declared section 768.54(3)(c), Florida Statutes (1981), unconstitutional. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Appellants are the Florida Patient's Compensation Fund (Fund) and the Department of Insurance (Department). Appellees are fifty-seven Florida hospitals who were members of the Fund during either Fund year 1977-78, 1978-79, or both. Section 768.54 created the Florida Patient's Compensation Fund. Section 768.54(3)(c) specifies the terms of the Fund's contracts with its members. The Fund, which commenced operation in 1975, is a non-profit entity which provides medical malpractice protection to the physicians and hospitals who join it. The act creating the Fund permits all *818 health care providers, other than hospitals, to become members if they choose to, but hospitals are required to join unless they can demonstrate financial responsibility for malpractice claims. The Fund is financed through base fees paid by its members, additional fees, and assessments.
Section 768.54(3)(c) reads:
(c) Fees and assessments.  Annually, each health care provider, as set forth in subsection (2), electing to comply with paragraph (2)(b) shall pay the fees established under this act, for deposit into the fund, which shall be remitted for deposit in a manner prescribed by the Insurance Commissioner. The limitation of liability provided by the fund shall begin July 1, 1975, and run thereafter on a fiscal-year basis. For the first year of membership, each participating health care provider shall pay a base fee for deposit into the fund in the amount of $1,000 for any individual, or $300 per bed for any hospital. Those entering the fund after the fiscal year has begun shall pay a prorated share of the yearly fees for a prorated membership. The base fee charged after the first year of participation shall be $500 for any individual, or $300 per bed for any hospital. The base fees to be paid by those health care providers defined in subparagraphs (1)(b)5., 6., 7., and 8. shall be established by the fund on an actuarially sound basis. In addition, after the first year of operation, additional fees may be charged but shall be appropriately prorated for the portion of the year for which the health care provider participated in the fund, based on the following considerations:
1. Past and prospective loss and expense experience in different types of practice and in different geographical areas within the state;
2. The prior claims experience of the members covered under the fund; and
3. Risk factors for persons who are retired, semi-retired, or part-time professionals.
Such base fees may be adjusted downward for any fiscal year in which a lesser amount would be adequate and in which the additional fee would not be necessary to maintain the solvency of the fund. Such additional fee shall be based on not more than two geographical areas with three categories of practice and with categories which contemplate separate risk ratings for hospitals, for health maintenance organizations, for ambulatory surgical facilities, and for other medical facilities. Each fiscal year of the fund shall operate independently of preceding fiscal years. Participants shall only be liable for assessments for claims from years during which they were members of the fund; in cases in which a participant is a member of the fund for less than the total fiscal year, a member shall be subject to assessments for that year on a pro rata basis determined by the percentage of participation for the year. The fund shall be maintained at not more than $15,000,000 per fiscal year. Additional fees, assessments, or refunds shall be set by the Insurance Commissioner after consultation with the board of governors of the fund. Nothing contained herein shall be construed as imposing liability for payment of any part of a fund deficit on the Joint Underwriting Association authorized by s. 627.351(7) or its member insurers. If the fund determines that the amount of money in an account for a given fiscal year is in excess of or not sufficient to satisfy the claims made against the account, the fund shall certify the amount of the projected excess or insufficiency to the Insurance Commissioner and request the Insurance Commissioner to levy an assessment against or refund to all participants in the fund for that fiscal year, prorated, based on the number of days of participation during the year in question. The Insurance Commissioner shall order such refund to, or levy such assessment against, such participants in amounts that fairly reflect the classifications prescribed above and are sufficient to obtain the money necessary to meet all claims for said fiscal year. In no case shall any assessment for a particular year against any health care provider, other *819 than those health care providers defined in subparagraphs (1)(b)1., 5., 6., and 7., exceed an amount equal to the fees originally paid by such health care provider for participation in the fund for the year giving rise to such assessment. If any assessments are levied in accordance with this subsection as a result of claims in excess of the limitation of a provider's liability of $500,000 per occurrence as specified in paragraph (2)(b), and such assessments are a result of the liability of certain individuals and entities specified in paragraph (2)(e), only hospitals shall be subject to such assessments.
In October of 1981, the Fund certified to the Department deficiencies for the Fund years 1977-78 and 1978-79 totalling some $17 million and sought an assessment against Fund members. A hearing officer found the assessments necessary. The Department levied these assessments against the Fund participants to meet the deficiencies. The Department interpreted section 768.54(3)(c) as precluding assessments against health care providers, other than hospitals, which would exceed the amount of fees paid by those individuals for participation in the Fund for the year found to be deficient. As a result, $10.5 million in additional assessments for claims stemming from charges of physician malpractice were assessed against the hospitals (also HMO's, ambulatory surgical centers, and other medical facilities participating in the Fund).
Appellee hospitals filed an appeal to the First District Court of Appeal arguing: 1) that section 768.54(3)(c) did not require the assessments against the hospitals as ordered; 2) that the order was not supported by substantial evidence; and 3) that the statute was unconstitutional. The district court held that the statute was an unlawful delegation of legislative power because it lacked sufficient standards and guidelines to the Department for its proper administration of the Fund.
The Fund and the Department immediately filed this appeal and a motion for expedited review to this Court. The motion was granted. On June 9, 1983, we issued an order, after hearing the oral arguments in this case, declaring the statute to be constitutional both on its face and as applied. Department of Insurance v. Southeast Volusia Hospital District, 432 So.2d 592 (Fla. 1983). Accordingly, the decision of the district court was reversed. We stated at that time that this opinion would follow. that this opinion would follow.
The district court found the statute to be almost totally absent of guidelines and standards for the establishment of fees and assessments. The opinion cited six provisions which were deemed invalid for giving "sole discretion" to the Fund in the absence of sufficient guidelines. The first provision held to be constitutionally infirm is the provision which directs that base fees for health maintenance organizations, ambulatory surgical centers and other medical facilities (as defined by § 768.54(1)(c)) are to be "established by the fund on an actuarially sound basis." The district court stated that this part of the statute left to the Fund sole discretion for establishing the amount of fees. We do not agree. We do agree with the district court's conclusion that the crucial test in determining whether a statute amounts to an unlawful delegation of legislative power is whether the statute contains sufficient standards or guidelines to enable the agency and the courts to determine whether the agency is carrying out the legislature's intent. Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1978); Lewis v. Bank of Pasco County, 346 So.2d 53 (Fla. 1976). The courts of Florida have found concepts of actuarial soundness to be a meaningful standard. McNulty v. Blackburn, 42 So.2d 445, 447 (Fla. 1949). The Florida Constitution employs the standard of "sound actuarial basis." Art. X, § 14, Fla. Const. These principles are also incorporated in other statutes. §§ 627.062(2)(a) & 627.0651(2), Fla. Stat. (Supp. 1982). There is simply no merit to this argument.
The second provision found invalid by the lower court is that which provides that base fees in general may be "adjusted downward" for any fiscal year in which a *820 "lesser amount would be adequate." We do not find this criterion to be vague or standardless. Providing a clearly defined and limited option to the Fund to make such adjustments when additional fees are not necessary to maintain the solvency of the Fund is not an example of an improper delegation of legislative power. The Tribune Co. v. School Board of Hillsborough County, 367 So.2d 627, 628 (Fla. 1979).
The district court also found the statute deficient for failing to state expressly how or when additional fees are to be set and whether they are a prerequisite to the levying of assessments. The statute does set forth explicit factors which are to be applied in setting additional fees. The statute does not unconstitutionally delegate legislative power simply because it leaves the determination of when these fees will be set up to the Department. The legislature may delegate to authorized officials and agencies the authority to determine facts to which the established policies of the legislature are to apply. Florida Welding & Erection Service, Inc. v. American Mutual Insurance Co., 285 So.2d 386, 388 (Fla. 1973). It is the power to say what the law is that is prohibited from being delegated. Coca-Cola Co., Food Division v. State, Department of Citrus, 406 So.2d 1079 (Fla. 1981), appeal dismissed sub nom Kraft, Inc. v. Florida Department of Citrus, 456 U.S. 1002, 102 S.Ct. 2288, 73 L.Ed.2d 1297 (1982); Rosslow v. State, 401 So.2d 1107 (Fla. 1981).
The fifth area of the statute attacked by the district court for an obvious absence of standards and guidelines is the portion of section 768.54(3)(c) which deals with assessments. The court found that those provisions give "total discretion" to the Fund "to determine whether the monies collected in a given fund year are in excess or insufficient to satisfy claims made against the fund year" without supplying any guidance to assist the Fund in this determination. Again, we find no merit in the proposition that this constitutes the sort of delegation which is a non-delegable legislative function. The question of determining when a deficit exists or not is a technical issue of implementation and not a fundamental policy decision. To require constant legislative supervision of the question of when a deficit exists or the selection from the numerous available tests that might be used for that purpose is neither practical nor required by the constitution. Cf. State v. Bender, 382 So.2d 697 (Fla. 1980) (Court approved statutory provisions directing the Department of Highway Safety & Motor Vehicles and the Department of Health & Rehabilitative Services to establish and approve appropriate testing methods for determining alcohol intoxication).
Finally, the district court found fault with the statute's provisions for levying assessments. The court found the statutory standard for levying assessments ambiguous and a delegation problem because different interpretations of this language were offered by the Fund and the hospitals. This finding is contrary to well established principles of law. A statute is not unconstitutional simply because it is subject to differing interpretations. The administrative construction of a statute by the agency charged with its administration is entitled to great weight. We will not overturn an agency's interpretation unless clearly erroneous. State ex rel. Biscayne Kennel Club v. Board of Business Regulation, 276 So.2d 823, 828 (Fla. 1973). In addition, when an interpretation upholding the constitutionality of a statute is available to this Court, we must adopt that construction. Miami Dolphins, Ltd. v. Metropolitan Dade County, 394 So.2d 981, 988 (Fla. 1981); Leeman v. State, 357 So.2d 703, 705 (Fla. 1978).
The statute requires the Insurance Commissioner to levy assessments against fund members in amounts which "fairly reflect the classifications prescribed above." The Fund and the Department interpret this part of the statute as requiring assessments to be fairly related to the same criteria that are utilized for setting the original fees. The Department has followed precisely this approach in levying the assessments being contested in this appeal. The details of this approach were developed by the Department's actuary. The hearing officer *821 found that this method fairly reflected the assessments to the classifications prescribed in the statute. The method utilized involves modification to allow for the statute's proscription against assessing health care providers more than "an amount equal to the fees originally paid by such health care provider for participation in the fund for the year giving rise to such assessments." The Department and the Fund contend that this statutory cap places a total cumulative limit on how much a physician can be assessed for a particular fund year, the cap being equal to one hundred percent of the member's fees originally paid for the fund year giving rise to the assessment. Appellee hospitals contend that the statute should be read as allowing each member to be assessed one hundred percent of his fees each year that passes after the fund year for which the assessment is being levied. The Department's construction of the statutes is clearly based upon a plain reading of the statute and we uphold that interpretation.
The appellee hospitals also challenge the statute as violating the equal protection clauses of the Florida and Federal Constitutions. The district court did not address this issue having found the issue of unlawful delegation to be dispositive. Under the equal protection clauses, governmental acts that classify persons arbitrarily may be invalid if they result in treating similar people in a dissimilar manner. State v. Leicht, 402 So.2d 1153, 1155 (Fla. 1981), cert. denied, 455 U.S. 989, 102 S.Ct. 1611, 71 L.Ed.2d 848 (1982); State v. Lee, 356 So.2d 276, 279 (Fla. 1978). Appellants contend that hospitals and physicians are not similarly situated and we agree. While both may fall under a general classification, health care providers, they clearly are not similarly situated. Hospitals are corporate entities with larger budgets and much larger numbers of patients over which to spread costs. There are numerous differences between the two which justify the different treatment of these two groups by the statute. We find no merit to appellees' argument on this issue.
The hospitals have also objected to the statute as violating due process. To comply with the constitutional guarantee of due process of law, all legislative enactments must be rationally related to the achievement of a legitimate legislative purpose. Rollins v. State, 354 So.2d 61 (Fla. 1978). The provisions of the statute plainly satisfy the purpose of the statute, namely, to provide medical malpractice protection for Florida health care providers under terms accepted by the participants.
Finally, the issue has also been raised in this appeal of whether the Department failed to find that the assessments being levied were supported by competent, substantial evidence. The district court noted that the hearing officer, in an exhaustive recommended order which was later adopted by the Department, had concluded that the assessments levied by the Department were proper. In addition, the record reflects that the appellee hospitals were afforded the full protection of chapter 120. The correct standard of review of this type of administrative hearing is as follows:

[O]ur task is only to assure that the affected party was protected by adherence to Chapter 120 processes, that the dispositive finding is supported by substantial competent evidence appropriate to the issue, and that the agency was not "clearly erroneous or unauthorized," Gay v. Canada Dry Bottling Co. of Florida, Inc., 59 So.2d 788, 790 (Fla. 1952), in interpreting the statute given in its charge to enforce.
Barker v. Board of Medical Examiners, 428 So.2d 720, 723 (Fla. 1st DCA 1983) (emphasis supplied). The district court correctly found that there was competent substantial evidence to support the need for an assessment and the hearing officer's recommendations. We find no merit in the appellees' challenge to this finding.
For these reasons, we upheld the constitutionality of section 768.54(3)(c) and reversed the decision of the district court.
It is so ordered.
*822 ALDERMAN, C.J., and BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.