NIMMONS, Judge.
These two cases were consolidated at the trial level and have also been consolidated on appeal. The appellants in BA-84 consist of 41 Florida hospitals while the appellants in BA-80 are 57 Florida hospitals. The appellants will be referred to collectively as the “Hospitals.”
The Hospitals appeal from an order dismissing their complaint against the Florida Patient’s Compensation Fund (the “Fund”) and the Department of Insurance of the State of Florida (the “Department”). Although the Hospitals sought additional relief in the lower court, they have abandoned all but their claims predicated upon an alleged breach of contract between the Fund and themselves by reason of the Fund’s alleged failure to charge participating health care providers actuarially sound fees for each of several years in which the Hospitals were members of the Fund. Those years encompassed 1976 through 1981. As will be discussed more particularly below, each year was a separate “contract” year commencing July 1 and ending the following June 80.
Essentially, the Hospitals claim that the Fund failed to charge the participating physicians actuarially sound fees and that the Hospitals have sustained resulting damages because of subsequent assessments which the Hospitals have been required to pay in order to make up for deficiencies in the Fund as a result of greater-than-anticipated Fund liabilities for malpractice claims. This has had substantial impact upon the hospital members because the hospitals, under Section 768.54, Florida Statutes,[1] bear a greater burden than physician members for such assessments, there being a statutory cap placing a total cumulative limit on how much a physician can be assessed for a particular Fund year, and there being no such limitation applicable to hospitals.
The Fund, which commenced operation in 1975, is a non-profit entity created by Chapter 75-9, Laws of Florida, for the purpose of providing medical malpractice protection to the physicians and hospitals who join it and to provide compensation to persons injured as a result of medical malpractice. All health care providers are permitted to join the Fund except that hospitals are required to participate unless they can demonstrate financial responsibility for malpractice claims in any of the alternative ways specified in the statute. Section 768.-54(2)(c), Florida Statutes.
Participation in the Fund is on an annual basis, and each Fund year operates independently of preceding years. Health care providers must make an election each year to join prior to the commencement of the new fiscal year on July 1. The Fund provides its protection to members by Fund year on an occurrence basis and the members are covered for acts of malpractice which occur between July 1 and the following June 30.
The Fund is financed through base fees, additional fees and assessments paid by its *381 members.[2] Doctors pay the statutorily prescribed base fee of $1,000 and hospitals pay a base fee of $300 per bed. In addition, the statute provides for the charging of additional fees when actuarial soundness calls for such.[3] The statute also provides that additional fees, assessments, or refunds shall be set by the Insurance Commissioner after consultation with the Fund’s board of governors.
Further, the statute provides that if the Fund determines that there are insufficient sums for a given fiscal year to satisfy claims for that year, the Fund shall certify the amount of the projected insufficiency to the Insurance Commissioner in order to levy an assessment against all participants in the Fund for that fiscal year, and the commissioner is required to levy such assessment against the participants in amounts that fairly reflect the same criteria utilized for setting the original fees. See Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d 815, 821 (Fla.1983).
The Fund does not operate on a pay-as-you-go basis with claims of earlier years being paid from fees for later years. Instead, valid claims which relate to a given Fund year are paid only from monies contributed by members of that same Fund year. The statutory solution for insufficiency of monies to pay claims is the levying of a deficit assessment of members of the applicable Fund year. As earlier noted, physicians and hospitals are in a different position as far as responsibility for assessments is concerned. Physicians are subject to liability for assessments limited to the amount of fees originally paid at the time the physician elects to participate' in the Fund for a particular year. On the other hand, there being no cap on the assessments of hospitals, the potential liability of hospital members to the Fund is limited only by the amount of claims against the Fund.[4] To the Hospitals, this is the “rub” because they are having to bear a greater burden in assessments than they would otherwise have had to bear if the fees charged the physicians during the relevant Fund years had been at a higher level consistent with actuarially sound principles as provided by the statute.
In prior litigation, the Hospitals have not met with success in contesting through the administrative process assessments which have been levied for past Fund years. See Highlands County Hospital District v. Department of Insurance, 452 So.2d 91 (Fla. 1st DCA 1984). Such efforts have included the Hospitals’ request that the Department conduct administrative hearings for the purpose of imposing additional fees for past Fund years and the Hospitals’ administratively contesting assessments on the grounds that such assessments were improperly arrived at by reason of the failure originally to charge appropriate fees for the applicable Fund years. Ibid.
Although the court in Highlands (which involved two of the Fund years with which we are involved) noted that the hospitals were entitled to be heard administratively *382 on the amount of additional fees, the court held that they were barred by laches from raising those issues.
The instant litigation, on the other hand, represents a new and somewhat novel approach to the Hospitals’ efforts to gain relief from the effects of assessments levied for past Fund years. In the face of such defenses as res judicata, collateral estoppel and failure to exhaust administrative remedies, which have been raised herein by the appellees, the Hospitals assert that the instant case, in sharp contrast to prior proceedings, involves purely and simply an action at law for damages for breach of contract. The Hospitals claim that, as recognized in Department of Insurance v. Southeast Volusia Hospital District, supra, each of the participating health care providers had a contract with the Fund the terms of which were statutorily provided in Section 768.54(3)(c).[5] The Hospitals claim that the Fund was contractually obligated, by virtue of the applicable statutory provisions, to determine the necessity of charging physician members additional fees by the utilization of applicable actuarial principles, and, where such additional fees were appropriate, to make the necessary requests for approval of such fees to the Department.[6]
The Hospitals claim that the Fund breached its contractual obligations owed to them as participating Fund members. The Hospitals’ complaint alleged that for some of the Fund years, the Fund made no request for additional fees. With respect to one of the Fund years, the complaint asserts that the Fund recommended nominal additional fees for physicians notwithstanding the available actuarial information suggesting the necessity of substantial additional fees. For another Fund year, the complaint alleged that the Fund’s actuary recommended additional fees for physicians but the Fund, although supporting its actuary’s findings, did not specifically request additional fees. For still another year, the complaint alleged that the Fund recommended substantial additional fees for physicians, that the Department refused to adopt such fees without affording the Hospitals notice and opportunity to be heard, and the Fund never requested further fee hearings and did not appeal the Department’s order.
The complaint alleged that the Hospitals have sustained damages by the failure of the Fund to set physician fees at sufficiently high actuarially sound levels which has resulted in the necessity of assessments in order to meet substantial deficits for the various Fund years, and by the Hospitals’ *383 having to bear a greater burden of the assessments in view of the statutory cap on physician assessments.
Although there has been much discussion in the lower court and on appeal about the applicability of various defenses raised and the possibility of the trial court’s having prematurely ruled via motions to dismiss on defenses such as res judicata and collateral estoppel, which are usually not proper subjects of a dismissal motion,[7] nevertheless there is one rather fundamental basis, recognized by the trial court, for dismissal.
As previously noted, each Fund year is treated separately from the other Fund years, and health care providers decide each year whether they will “sign on” for the ensuing year. Under the statutory scheme, a health care provider knows in advance not only what his own fee (including any “additional fee”) will be but also the fees to be charged other participating health care providers. The Hospitals have urged that their claim be viewed as a breach of contract action for damages. In doing so, we do not see how the Hospitals can overcome the fact that they entered into the contract with knowledge of the actual fees. The so-called “additional fees” were not added on after the commencement of the Fund year but, as earlier noted, were established in advance. Our view might well be different if, instead of establishing the actual fees in advance, the contract for each given year had provided that the fees would subsequently be determined on a certain formula or basis such as by the application of acceptable actuarial principles.[8]
Our opinion need not address the administrative remedies which might have been available to the Hospitals had they wished to contest the fees as not set on an actuarially sound basis. Highlands County Hospital District v. Department of Insurance, supra, suggests that the Hospitals could have asserted such remedies if timely pursued. And Judge Ervin’s concurring opinion in Highlands indicates that the Hospitals might have sought timely relief through the circuit court if administrative remedies proved inadequate. But whatever administrative or judicial (whether declaratory, injunctive or otherwise) remedies might have been available to contest the fees, the Hospitals, having entered into the annual agreements with knowledge of the actual fees established for the ensuing year, will not be heard to complain of the amount of the fees via a contract action for damages.
Having determined that the appellees were entitled to the order of dismissal on the above grounds, we need not address the remaining grounds or arguments raised herein or in the trial court.
AFFIRMED.
SMITH and ZEHMER, JJ., concur.

. The Fund was created in 1975 by Chapter 75-9, Laws of Florida. That law first appeared in the Florida Statutes in 1975 as Section 627.-353. It was transferred to Section 768.54 in 1976. See Section 627.353 (1976 Supp.). During its ten-year history, this law has been amended numerous times. Because of the period of time covered by this lawsuit, we have found it a challenging task to identify the particular statutory provisions as they existed during the various Fund years in question. For the most part, the parties hereto have not made an effort to draw distinctions based upon the language of Section 768.54 as it existed during various periods of time. Since the parties, have not done so, neither shall we unless we feel that the proper treatment of a particular issue compels us to do so. Inasmuch as we are dealing with a contract action for damages, we do not believe that the amendments to Section 768.54 after 1981 are relevant. Accordingly, our references to 768.54, unless otherwise noted, will be to that version which appears in Florida Statutes (1981). We note that this is the same version with which the Florida Supreme Court dealt in Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d 815 (Fla.1983), a significant case to which we make reference subsequently in our opinion.

. See Section 768.54(3)(a). As mentioned in footnote 1, supra, our references to Section 768.-54 are to the 1981 version unless otherwise mentioned. In passing, we note that since the enactment of Chapter 82-236, Laws of Florida, the concept of ‘Rase fees” and "additional fees” no longer exists.

. Under Section 768.54(3)(c), Florida Statutes (1981), the additional fees were to be based upon the following considerations:
"1. Past and prospective loss and expense experience in different types of practice and in different geographical areas within the state;
2. The prior claims experience of the members covered under the fund; and
3. Risk factors for persons who are retired, semi-retired, or part-time professionals.”
If there had been any serious question as to whether the legislature equated the above considerations with "actuarial soundness,” such question was dispelled in 1982 by the legislative provision that actuarial soundness be determined based upon the above enumerated considerations. See Chapter 82-391, section 2, Laws of Florida.

.In Department of Insurance v. Southeast Volu-sia Hospital District, supra, the Florida Supreme Court rejected the Hospital’s challenge to the apparently disparate treatment of assessments for physicians and hospitals.

. Department of Insurance v. Southeast Volusia Hospital District, supra, was an appeal to the Florida Supreme Court from this court’s holding in 432 So.2d 592 that Section 768.54(3)(c) was unconstitutional in that the statute was an unlawful delegation of legislative power because it lacked sufficient standards and guidelines to the Department for its proper administration of the Fund. The Supreme Court, in reversing, sustained the constitutionality of the statute, holding inter alia that the statute’s guidelines for the establishment of fees, additional fees and assessments were adequate, that the statute’s differing treatment of hospitals and physicians was not a denial of equal protection of the laws, and that the statute was not violative of due process. The Supreme Court was not called upon to deal with any right of action for damages by reason of a breach of contract between the Fund and the participating health care providers.

. The Fund has not contended that it should, by reason of its status as a statutorily created entity and its duties under the applicable statutory scheme, be insulated from liability for damages for breach of contract. Since no such issue has been raised and since we find that the appellees were entitled to an order of dismissal on other grounds, we do not address any such question. Likewise, we do not decide the related question as to whether the Supreme Court in Department of Insurance v. Southeast Volusia Hospital District, supra, by its reference to “contract,” meant to infer that the statutory duties of the appellees under Section 768.54 are such that the breach of the same will support an action at law for damages, or, if such an action is maintainable, whether recovery of the particular damages sought by appellants can be said to be reasonably within the contemplation of the legislature (and therefore of the participants in this statutory plan) when the statute was enacted. The appellees not having briefed and argued these questions and the order of dismissal being af-firmable on other grounds, we do not treat such question.

. See Fla.R.Civ.P. 1.110(d); Hough v. Menses, 95 So.2d 410 (Fla.1957); Holley v. Universal Rental Properties, Inc., 416 So.2d 861 (Fla. 1st DCA 1982).

. This, of course, assumes that the breach of Section 768.54 duties would support an action at law for damages, a question we do not decide. See footnote 6 supra.