PEARSON, TILLMAN (Ret.), Associate Judge.
These appeals by two separate groups of hospitals are from a final order of the Department of Insurance (Department) determining that assessments against the hospitals for the Florida Patient’s Compensation Fund (Fund) for the Fund years 1976-1977 to and including 1980-1981 “fairly reflect” the statutory classifications contained in Section 768.54, Florida Statutes, and were properly made. The appeals have been consolidated for all appellate purposes.
The hospitals have contended that the assessments are unlawful and unfair. A recitation of the lengthy proceedings which have resulted may be found in: Southeast Volusia Hospital District v. State, Department of Insurance, 432 So.2d 592 (Fla. 1st DCA 1983), reversed by Department of Insurance v. Southeast Volusia *821 Hospital District, 438 So.2d 815 (Fla.1983), appeal dismissed, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984); Highlands County Hospital District v. Department of Insurance, 452 So.2d 91 (Fla. 1st DCA 1984); and Tallahassee Memorial Regional Medical Center v. Florida Patient’s Compensation Fund, 466 So.2d 379 (Fla. 1st DCA 1985) [10 FLW 727]. We do not think it necessary to repeat here the legislative, administrative, and judicial history except as we perceive that it applies to the issues raised on this appeal.
The Fund was established in 1975 by Chapter 75-9, Laws of Florida. By joining and maintaining their membership in the Fund, health care providers, including doctors and hospitals limit their liability for medical malpractice as a matter of law and consequently reduce the cost of their medical malpractice insurance. At the same time, assessments paid to the Fund by its members are used as a source of recovery by those patients who have obtained medical malpractice judgments against member health care providers in excess of the member’s limitation of liability. The Fund is supported by fees and assessments. “Base fees” were set by statute. Prior to the beginning of a Fund year, “additional fees” may be set for members for that upcoming year.[1] Finally, assessments are later imposed when the amount of money in an account for a given fiscal year is not sufficient to satisfy the claims made against the Fund.
Under the original legislation creating the Fund, all classes of health care providers could be assessed unlimited amounts in order to make up any deficiencies. As a result of the legislative amendments of Chapter 76-260, Laws of Florida, which became effective July 1, 1976, the amount which physicians could be assessed was limited to the amount each physician had paid to join the Fund for a particular year of coverage. The limitation on assessments was removed in 1983 pursuant to Chapter 83-206, Laws of Florida.[2] The 1976 legislative amendments also required that each fiscal year of the Fund operate independently of all other fiscal years of the Fund, including the requirement that occurrences giving rise to claims in a particular fund year be paid only from fees, investment income on those fees, and assessments collected for that particular year. That legislation remains unchanged.
The Insurance Commissioner, who exercises jurisdiction over the Fund, issued a notice of assessment on September 19, 1983. The notice announced that the Fund years subject to this assessment were 1976-1977, 1977-1978, 1978-1979, and 1980-1981. Because of the “cap” on the amount physicians could be assessed, large amounts of physician-caused losses were assessed against the hospital members, for whom there was no assessment cap.
The hospitals filed petitions requesting formal administrative hearings. After evi-dentiary hearings, the hearing officer entered his recommended order levying assessments in accordance with the notice of assessment. The Department entered its final order adopting the recommended order. These appeals followed.
The principal issue presented by this appeal is whether the physician assessment cap was legally applied to assessments for Fund years 1976-1981 when such cap was removed by statute in June of 1983 and the assessments were made in September of 1983. The final order includes as a conclusion of law, “that the 1983 legislative amendments to Section 768.54, Florida Statutes, did not remove the cumulative assessment cap for the years here under consideration.”
The statute, Section 768.54(3)(d), Florida Statutes (1983), as amended by Chapter 83-206, Law of Florida, contains the provision: “Additional assessments may be cer *822 tified and levied in accordance with this paragraph as necessary for any fiscal year.” The hospitals contend “any fiscal year” includes those years predating the legislation and indicates a clear legislative intent to affect all assessments made after the effective date of the legislation. The Fund points out that the same paragraph of the statute contains the provision:
Each fiscal year of the Fund shall operate independently of preceding fiscal years.... The Insurance Commissioner shall approve the request of the Fund to refund to, or levy any assessment against, the participants, provided the refund or assessment fairly reflects the same considerations and classifications upon which the membership fees were based.
The entire operation of the Fund is upon a fiscal-year basis. Members may join the Fund for any given year. Membership fees and assessments are made separately for each fiscal year. This indicates the purpose of the legislature that the contract between the Fund and its members should be upon a year-to-year basis. To hold in accordance with the contention of the hospitals would change the yearly contracts that the physicians made with the Fund during the years that the cap on their assessments was in effect.
In Dewberry v. Auto-Owners Insurance Company, 363 So.2d 1077 (Fla.1978), the Supreme Court determined that a 1976 nonstacking law applied to an accident occurring after the enactment of the law but held that two insurance policies contracted for before the law were not affected. It thus appears that to interpret the statute as the hospitals urge would be to give the statute an unconstitutional meaning. When an interpretation upholding the constitutionality of a statute is available to a court, it must adopt that construction. Miami Dolphins, Ltd. v. Metropolitan Dade County, 394 So.2d 981 (Fla.1981); Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d 815 (Fla.1983), appeal dismissed, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984).
An additional holding of the last cited case which concerned the constitutionality of the provision for the assessment here under consideration, requires the rejection of the hospitals’ contention. In that case, the court held that the administrative construction of the statute by an agency charged with its interpretation will not be overturned unless clearly erroneous. The Department’s interpretation of the statute must be affirmed.
The hospitals’ point on appeal, urging that there was a lack of competent, substantial evidence to demonstrate the claim reserves used by the Fund were reasonably determined, fails to present error on the record before us. See Department of Insurance v. Southeast Volusia Hospital, supra.
A third point, urging that the hospitals were not accorded a “point of entry” to challenge the fees set for the Fund years 1980-1981 and thereafter, has been decided adversely to the contentions of the hospitals in Southeast Volusia Hospital District v. Department of Insurance, 464 So.2d 1275 (Fla. 1st DCA 1985). See Highlands County Hospital District v. Department of Insurance, supra.
Prior to the argument of these appeals, we were presented with a motion by the appellee Fund to dismiss the appeals because the hospitals had not paid the contended assessments as provided by Section 768.54(3)(d), Florida Statutes. The motion was reserved for disposition after oral argument. The motion is denied upon authority of the holding of the Supreme Court of Florida in Pomponio v. Claridge of Pompano Condominium, Inc., 378 So.2d 774 (Fla.1979).
Affirmed.
MILLS and NIMMONS, JJ„ concur.

. As a result of the enactment of Chapter 82-236, Laws of Florida, the concepts of "base fees” and "additional fees” no longer exist.

. The limitation or “cap” on the amount physicians could be assessed was increased to two times the fees originally paid by Chapter 82-236, Laws of Florida (1982), before being eliminated in 1983.