660 So.2d 1177 (1995)
FLORIDA DEPARTMENT OF INSURANCE, Appellant,
v.
CYPRESS INSURANCE COMPANY, Appellee.
No. 93-2556.
District Court of Appeal of Florida, First District.
October 2, 1995.
*1178 Helen Ann Hauser of Dittmar & Hauser, Coconut Grove; and Dennis Threadgill, Allyson Puckett, and Karen Asher-Cohen, Division of Rehabilitation and Liquidation, Florida Department of Insurance, Tallahassee, for Appellant.
Bruce A. Minnick of Mang, Rett & Collette, P.A., Tallahassee; and Milton J. Wallace, Michael G. Shannon, and Mark D. Wallace of Wallace, Bauman, Fodiman & Shannon, P.A., Coral Gables, for Appellee.
ZEHMER, Chief Judge.
The Florida Department of Insurance appeals a final order that dismisses its petition seeking a determination that Cypress Insurance Company is statutorily insolvent and appointment as receiver for Cypress for purpose of liquidation. The Department essentially raises three issues on appeal: (1) whether the circuit court erred in dismissing the petition, thereby permitting Cypress to carry out its own plan of pseudo-rehabilitation and obtain court approval thereof despite the Department's protest; (2) whether the circuit court erred in finding that Cypress's issuance of four surplus notes pursuant to a settlement agreement with the receiver for MCA Insurance Company was permissible under Florida law and rendered Cypress statutorily solvent, where the surplus notes fail to satisfy the requirements of section 628.401, Florida Statutes (1991), and rule 4-137.001, Florida Administrative Code, for lack of approval by the Department; and (3) whether the circuit court abused its discretion in overturning rather than giving great deference or weight to the Department's findings and interpretation regarding the necessity for liquidating Cypress, an insurance company whose regulation is statutorily delegated to the Department. We affirm.
*1179 Since 1989, Cypress has operated as a Florida insurer reinsuring 50% of the flood business written by Audubon Insurance Company and underwritten by Frank R. MacNeill and Son. In 1991, Cypress entered into a reinsurance agreement with MCA Insurance Company in which Cypress agreed to assume 10% of MCA's net business in Florida written through MacNeill. In August 1992, as a result of Hurricane Andrew, Audubon and MCA, and consequently Cypress, incurred excessive claims for losses suffered by their insureds. On October 27, 1992, the Department filed a petition seeking an order to show good cause why the Department should not be appointed as receiver for Cypress for purposes of liquidation. As grounds, the petition alleged that the Department was empowered by sections 631.031 and 631.061, Florida Statutes (1991), to apply for the order to show cause because Cypress was insolvent within the meaning of subsection 631.011(11) due to "excessive losses caused in part by Hurricane Andrew in that `all the assets of the insurer, if made immediately available would not be sufficient to discharge all its liabilities,'" and due to Cypress's failure to meet the minimum capital surplus requirements of sections 624.407 and 624.408. The petition alleged that Cypress also met the definition of insolvency under subsection 631.011(11) because it was "unable to pay its debts as they [became] due in the usual course of business." Attached to the petition were several documents, including the following: (1) a September 23, 1992, letter from Cypress's president, Malcolm MacNeill, to the Department in which he estimated Cypress's Hurricane Andrew losses at $3,600,000 arising out of a reinsurance agreement between Cypress and MCA and MCA's estimated losses of $55,000,000, and noted that while the $3,600,000 loss would impair Cypress's financial condition, that impairment could be overcome by a number of steps Cypress proposed to take; (2) an October 23, 1992, order entered by the Oklahoma County District Court finding MCA to be statutorily insolvent and appointing the Oklahoma Insurance Commissioner as receiver for MCA for purposes of liquidation; (3) a press release issued by the Oklahoma Insurance Commissioner stating that MCA officials estimated MCA's Hurricane Andrew losses to be in excess of $90,000,000, an increase from the company's original estimate of $50,000,000; and (4) an October 27, 1992, affidavit of Wayne Johnson, the Department's financial administrator for the Bureau of Property and Casualty Insurer Solvency and Market Conduct, stating his opinion, based on his review of Cypress's financial statements for March and June 1992, the reinsurance agreement, and certain correspondence, that Cypress's liquid assets were not sufficient to discharge its current liabilities and Cypress was unable to pay its debts as they became due in the usual course of business.
On January 8, 1993, the circuit court entered a Second Amended Order to Show Cause, Temporary Injunction and Notice of Stay. The court ruled that the Department had made a prima facie showing that Cypress was statutorily insolvent, which justified the appointment of a receiver, and ordered Cypress to show good cause, if any, why the Department should not be appointed as receiver for the purpose of liquidation. The order enjoined all persons and specified entities within its jurisdiction, including Cypress, from doing any act that might waste or otherwise dispose of Cypress's assets, books, and records, and commencing actions or obtaining any preferences, judgments, etc., against Cypress or its assets. Cypress filed a response to the order alleging that Cypress is not statutorily insolvent; that Cypress has entered into a settlement agreement with MCA, limiting Cypress's Hurricane Andrew losses to a $1 million cash payment and four surplus notes payable only out of future earnings, with a proviso that the obligation to make future payments on the notes is conditional in that such payments must never render Cypress statutorily insolvent; that the settlement agreement has been approved by the Oklahoma Department of Insurance, receiver for MCA; and that the only unsatisfied conditions of the agreement are approval by the Oklahoma County District Court and dismissal of these receivership proceedings. The response requested that the temporary injunction be vacated, the automatic stay be lifted, and these proceedings be dismissed with prejudice.
*1180 On March 4, 1993, Cypress filed a motion for summary judgment. The motion alleged that as a result of the settlement agreement, Cypress was not statutorily insolvent because its assets were sufficient to discharge all of its liabilities and pay its debts, and that Cypress was not statutorily impaired within the meaning of subsection 631.011(9). The Department filed a response that included a motion requesting immediate appointment as receiver for Cypress for purposes of rehabilitation based on the following reasons. First, it alleged that there was no material dispute whether grounds existed to justify immediate appointment of the Department as receiver for purposes of rehabilitation. Second, the conditions precedent to the validity of the settlement agreement had not yet occurred, namely approval of the agreement by the Oklahoma County District Court and discharge of the order to show cause by the Leon County Circuit Court. Third, rehabilitation via receivership was the only procedure authorized by chapter 631 for insurer rehabilitation, and Cypress's attempt at self-rehabilitation was not authorized by Florida law.
After a hearing, the circuit court entered an order on July 28, 1993, that dismissed the Department's petition and determined that Cypress was statutorily solvent. The order found in part:
1. Upon complete review of all evidence and testimony, the question of solvency has been resolved. Cypress' insolvency has been rehabilitated and therefore the company presently should not be considered insolvent. Cypress lawfully settled all reinsurance claims caused by Hurricane Andrew by agreement with the foreign insurance company and the State of Oklahoma.
2. The Settlement Agreement made between Cypress and the Oklahoma Department of Insurance as Receiver of MCA Insurance Company of Oklahoma ("MCA") including the issuance of surplus notes contemplated in the Settlement Agreement is valid.
3. The Department's purported disapproval of the surplus notes issued pursuant to the Settlement Agreement by the Florida Department is nonbinding on Cypress.
4. Section 628.401, Florida Statutes, entitled Borrowed Surplus, addresses only borrowed money and therefore is inapplicable to the surplus notes contemplated in the Settlement Agreement between Cypress and MCA.
5. Cypress' issuance of the surplus notes, pursuant to the Settlement Agreement, is a valid, discretionary exercise of business judgment, permissible under Florida Law.
6. The Settlement Agreement and Cypress' issuance of surplus notes at issue in this cause is a discretionary business act not prohibited by the Florida Insurance Code.
7. In this case, the effects of either Cypress' liquidation or the Settlement Agreement are essentially the same. If Cypress were liquidated, all proceeds from the liquidation of Cypress would devolve to the Oklahoma Department of Insurance as Receiver of MCA Insurance Co.
8. There is currently no statutory basis to liquidate Cypress as a Florida reinsurer. The Court has found that Cypress is statutorily solvent at present based on a valid Settlement Agreement that was legally entered into with the Receiver for MCA and approved by the Superior Court of Oklahoma.
On appeal, the Department contends that the circuit court erred in dismissing the petition and in permitting Cypress to carry out its own plan of pseudo-rehabilitation and obtain court approval thereof over the Department's protest. The Department argues that the Florida Insurance Code provides that a delinquency proceeding is the sole and exclusive method of liquidating or rehabilitating an insurer. Thus, it argues, once the Department has commenced the delinquency proceeding, all parties including the insurer are enjoined from transferring or encumbering any of the insurer's assets, an act Cypress clearly accomplished by its settlement agreement in violation of section 631.041 and the circuit court's show cause order. Also, the Department argues, Cypress failed to meet its burden of proving that it cured the *1181 problems existing at the institution of the proceedings and that several other grounds besides insolvency exist to require the receivership.
We agree that subsection 631.021(3) provides that a delinquency proceeding pursuant to chapter 631 is the "sole and exclusive method of liquidating, rehabilitating, reorganizing, or conserving an insurer." However, contrary to the Department's contention, no provision of section 631.021 prohibits an insurer (such as Cypress) that is the subject of a delinquency proceeding from entering into an agreement with a creditor to lawfully settle or compromise outstanding liabilities or claims and thereby render the insurer statutorily solvent. Nothing stated in the order to show cause and temporary injunction issued by the court prohibited such action by Cypress. The Department conceded at oral argument that, in determining whether to grant the Department's petition for receivership, the circuit court was required to look at the facts as they existed at the time of the hearing  not at the time the petition was filed. In this case, therefore, the court was required to give consideration to the effect of the settlement agreement executed after the petition was filed, which contemplated a $1,000,000 cash payment and issuance of the surplus notes by Cypress. Thus, as the Department's expert admitted, if the surplus notes contemplated by the settlement agreement were authorized by law and rendered Cypress statutorily solvent at the time of the hearing, the circuit court properly dismissed the Department's petition.[1]
The Department contends that the circuit court erred in finding that Cypress's issuance of surplus notes pursuant to the settlement agreement was permissible under Florida law. The Department argues that the instruments Cypress seeks to treat as surplus notes fail to fulfill several requirements of the NAIC[2] Practices Manual, adopted by rule 4-137.001, Florida Administrative Code, and section 628.401, Florida Statutes; therefore, the notes should be treated as a liability because: (1) they are not issued for cash or cash equivalents, but instead represent a shadowy promise against a real liability; (2) they have not been approved by Cypress's domiciliary jurisdiction, and not properly submitted for approval with appropriate documentation; and (3) they do not require the Department's approval before any payment of interest or principal can be made. Additionally, the Department argues, even if Cypress were empowered to issue these instruments, it could not thereby compel the Department to treat them, for statutory accounting purposes, as legitimate surplus notes when they do not satisfy the NAIC or statutory criteria for such treatment.
Cypress responds that section 628.401 is inapplicable to the surplus notes at issue because that statute unambiguously states that it contemplates an exchange of "borrowed money" for issuance of "surplus notes." Cypress argues that the notes in this case were not issued in exchange for borrowed money, but instead to settle a single outstanding liability claim arising under a reinsurance agreement by promising to make conditional payments designed to maintain the solvency of Cypress. Cypress denies that the surplus notes at issue were subject to prior approval by the Department, but even if they were, the Department could not disapprove the notes pursuant to subsection 628.401(3) because the Department could not argue in good faith that the notes were unnecessary or that the transaction was unfair and inequitable to Cypress or the MCA receiver, as required by that subsection. At oral argument, counsel for Cypress explained that, while Cypress may have been insolvent at the time the Department filed its petition, the company was statutorily solvent at the time of the show cause hearing; he specifically described how the Hurricane Andrew *1182 losses and the surplus notes contemplated by the settlement agreement were handled on Cypress's financial statements and December 1992 annual statement filed with the Department; and he demonstrated that the manner of handling these items on the financial statements to reduce Cypress's liabilities complied with accepted accounting practice.
We hold that section 628.401 does not apply to the surplus notes issued pursuant to the settlement agreement because that statute applies only to "borrowed surplus," i.e., money borrowed by "[a] domestic stock or mutual insurer ... to defray the expenses of its organization, to provide itself with surplus funds, or for any purpose of its business, upon a written agreement that such money is required to be repaid only out of the insurer's surplus in excess of that stipulated in the agreement." § 628.401(1), Fla. Stat. (1991). It is undisputed that Cypress's surplus notes are not issued in conjunction with any loan agreement or other type agreement contemplating that Cypress would borrow money. Instead, as the circuit court found, the notes were issued pursuant to an agreement between Cypress and the receiver for MCA to lawfully settle and compromise all liability for reinsurance claims caused by Hurricane Andrew, thereby preventing Cypress from becoming insolvent as a result of having to make immediate payment of the claims in full. Cypress's surplus notes do not constitute borrowed surplus, so the provision in subsection 628.401(3) requiring the Department's approval prior to issuance does not apply.
We also conclude that competent, substantial evidence supports the circuit court's finding that the settlement agreement rendered Cypress statutorily solvent at the time of the show cause hearing. Phillip Surprenant, a partner in the Price Waterhouse accounting firm who audited Cypress's records for the year ending December 31, 1992, testified that Cypress's financial statements properly treat the $1,000,000 cash payout mentioned in the agreement as an accrued liability and the surplus notes as equity, so that as of December 31, 1992, Cypress met the $1,500,000 minimum surplus and capital requirements for a Florida insurance company. The financial statements indicate that, as of that date, Cypress was solvent based on the definition of "insolvency" in subsection 631.011(11), and that Cypress's assets were sufficient to make the $1,000,000 cash payment and leave capital and surplus in excess of $2,500,000. If Cypress does not incur any additional liabilities, Cypress also could pay two of the four surplus notes when due without impairing its capital or falling below the Florida minimum capital requirements. Surprenant also testified that as a result of the Hurricane Andrew losses, Cypress has a potential unrecorded asset in form of a tax loss carry-forward that would permit Cypress to avoid federal income tax liability on the first $1,600,000 in earnings, and that this unrecorded asset is disclosed in an income tax note to the audited financial statements.[3]
Lastly, the Department contends that the circuit court abused its discretion in overturning rather than giving great deference or weight to the Department's findings and interpretation regarding the necessity for liquidating or rehabilitating Cypress as it is an insurance company whose regulation is statutorily delegated to the Department. The Department cites to administrative law cases with which we are quite familiar holding that a court reviewing an agency's administrative determination must defer to an agency's interpretation of an operable statute as long as that interpretation is consistent with legislative intent and supported by competent, substantial evidence.[4] But this proposition in the cited cases is not applicable here. This *1183 receivership action is not an administrative proceeding in which the Department acts as fact-finder and final decision maker and enters an administrative order to effect its will. Instead, it is a judicial proceeding in which those functions are the responsibility of the circuit court. Section 631.031 recognizes the circuit court's judicial discretion to determine whether the Department's petition or application should be granted by explicitly providing that, after the Department commences the delinquency proceedings by applying to the court for an order to show cause,
[o]n the return of such order to show cause, and after a full hearing, the court shall either deny the application or grant the application, together with such other relief as the nature of the case and the interests of the policyholders, creditors, stockholders, members, subscribers, or public may require.
§ 631.031, Fla. Stat. (1991).
AFFIRMED.
DAVIS, J., concurs.
BOOTH, J., dissents with opinion.
BOOTH, Judge, dissenting.
I respectfully dissent and would reverse. The record supports the Department's position that appellee is insolvent and has not satisfied its burden of proving that the settlement agreement involving the use of "surplus notes" cured its insolvency. See § 631.021, Fla. Stat. (1991).
NOTES
[1] We decline to address the Department's argument that other grounds beside insolvency exist for receivership because insolvency was the only ground alleged in the Department's petition and the only ground ruled upon in the appealed order.
[2] National Association of Insurance Commissioners.
[3] He explained that

because of the significant losses sustained as a result of Hurricane Andrew, the company had a number of tax deductions that it could not utilize, could not deduct in the current period. The tax rules permit you to carry forward those losses to offset future taxable income, and that's the purpose of this disclosure. It was not recorded as an asset because the future income has not been achieved, but it is disclosed as available as an asset based on future income.
[4] See, e.g., Public Employees Relations Comm'n v. Dade County Police Benevolent Ass'n, 467 So.2d 987 (Fla. 1985); Department of Ins. v. Southeast Volusia Hosp. Dist., 438 So.2d 815 (Fla. 1983), appeal dismissed, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984).