GOSHORN, Judge.
At issue is whether an ambulance dealer is included in the limited class of dealers protected by section 320.641, Florida Statutes (1993). The Department of Highway Safety and Motor Vehicles (the “Department”), pursuant to a recommended order from the Hearing Officer, determined they were not. We affirm.
Wheeled Coach Industries, Inc. (“Wheeled Coach”) is engaged in the manufacture of ambulances. It entered into a distributor’s contract with Aero Products Corporation (“Aero”) which provided that Wheeled Coach would sell ambulances to Aero for resale by Aero in Florida. Aero was granted the sole distributorship of Wheeled Coach ambulances in Florida pursuant to a two year contract.
By letter dated July 19, 1994, Wheeled Coach informed Aero that it did not intend to renew the contract. The letter stated in pertinent part:
Wheeled Coach believes there are no statutory provisions in Florida that restrict or prohibit the nonrenewal of the Agreement and that is completely within its rights to refuse to further recognize the relationship between Wheeled Coach and Aero. Specifically, Wheeled Coach does not believe the relationship between it and Aero is governed by §§ 320.60-70 Florida Statutes (1993) and, therefore, believes § 320.641, governing the procedure to be followed by a manufacturer that determines not to renew the agreement of one of its dealers, is also inapplicable.
* * ⅜ * * ⅜
Pursuant to paragraph 14 of the Agreement, no notice is required at the expiration date of the term set forth in paragraph 23 of the Agreement. However, Wheeled Coach will, although not legally or contractually required to do so, voluntarily continue to observe the terms of this Agreement for 90 days following your receipt of this notice, in effect, voluntarily providing you with the equivalent of the 90-day notice required under § 320.641. ⅜ ⅜: ⅜ ⅜ ⅜ ⅜
The Agreement between Wheeled Coach and Aero for Florida has expired [by] its own terms. Pursuant to paragraph 14 of the Agreement, it shall expire without notice at the expiration of the term stated in paragraph 23. Paragraph 23 of the Agreement provides that the term of the Agreement is for [a] two (2) year period commencing on March 1, 1991, and ending on February 28, 1993.
Aero, in an attempt to preserve its distributorship, petitioned the Department for a determination whether the termination of the franchise agreement was “unfair or prohibited” under section 320.641, Florida Statutes (1993) (“Unfair cancellation of franchise agreements”).[1] The Department dismissed *663 Aero’s petition, finding that the franchised dealer law, sections 320.60-70, Florida Statutes (1993), does not apply to ambulance dealers because ambulances are not motor vehicles within the meaning of section 320.60(10).
Sections 320.60-70 apply to motor vehicle dealers. “Motor, vehicle dealer” is defined in section 320.60(11), in pertinent part, as any corporation who, for pay, “repairs, sells, or services motor vehicles.” Subsection (10) defines “motor vehicle” as “any new automobile, motorcycle, or truck the equitable or legal title to which has never been transferred by a manufacturer, distributor, importer, or dealer to an ultimate purchaser.”[2] Aero concedes that an ambulance is neither an “automobile” nor a “motorcycle.” Therefore, to determine if Aero comes under the protection of section 320.641, we must consider if an ambulance (for the purpose of the franchised dealer law) is a truck.
Because there is no definition for “truck” in section 320.60, the hearing officer used the definition found in section 320.01(9), which provides:
“Truck” means any motor vehicle with a net vehicle weight of 5,000 pounds or less and which is designed or used principally for the carriage of goods and includes a motor vehicle to which has been added a cabinet box, a platform, a rack, or other equipment for the purpose of carrying goods other than the personal effects of the passengers.
The hearing officer concluded that “an ambulance is not designed or used for the carriage of goods. It is designed and used for the carriage of persons.” The hearing officer recognized:
The definition of a motor vehicle in Sec. 320.01(1) includes automobiles or trucks used to transport persons. That definition is broad enough to include ambulances. However, the definition in Sec. 320.01(1) does not apply if another definition is provided elsewhere in Ch. 320. See, Sec. 320.01 (introductory language). The definition of a motor vehicle in Sec. 320.60(10) applies, whenever the term motor vehicle is used in Secs. 320.61-320.70, including Sec. 320.641. See, See. 320.60 (introductory language).
Aero argues that the hearing officer’s conclusion was incorrect because, while an ambulance is commonly thought of as a, motor vehicle used for the transportation of the sick and injured, it is designed to transport, as well, medical and life support equipment to meet the needs of the persons it transports. It asserts that the mandatory inclusion of this medical equipment inside the ambulance brings an ambulance within the definition of truck, because an ambulance “principally” carries goods, even though it admittedly does not do so “exclusively.”
Aero also contends that any vehicle built on a truck chassis is a truck. It supports its argument by reference to the definition of “manufacturer” found in section 320.60(9), which defines.“manufacturer” in part as “any person ... who ... installs on previously assembled truck chassis special bodies or equipment which, when installed, form an integral part of the motor vehicle and which constitute a major manufacturing altera-tion_” It contends that the hearing officer’s conclusion that an ambulance is not a truck rests upon the illogical premise “that somehow during the manufacturing process the underlying character of a completed ambulance as a ‘truck’ is either lost or destroyed.”
Aero’s argument misses the point. Logically, an ambulance is a hybrid of a truck and a passenger car. Its function is to carry both *664 passengers and equipment. It would not be an ambulance if it were not outfitted with its medical 'equipment, and it cannot be said that carrying an injured person is only incidental to the function of an ambulance. The fact that it is constructed on a truck chassis is not dispositive of its nature under the definitions included in the franchised dealer law.
The Legislature’s provision of a narrow definition for “motor vehicles” as that term is used in section 320.641 (as opposed, for example, to the broader definition found in section 324.021 (relating to financial responsibility) or section 320.01(1) (relating to motor vehicle licenses generally)), suggests the Legislature’s intent to narrow the persons to whom section 320.641’s protection would extend. As pointed out by Wheeled Coach, had the Legislature intended to include ambulances, school buses, fire engines and other such vehicles within the franchised dealer law, it would have done so by not providing a separate, narrower definition of “motor vehicle” within that law.
Section 320.08 indirectly supports the hearing officer’s conclusion. This section, which imposes annual license taxes for the operation of motor vehicles, breaks “motor vehicles” into categories for purposes of licensing and registration. It specifically refers to ambulances (and hearses) under the heading of “Semitrailers, fees according to gross vehicle weight; school buses; special purpose vehicles.” § 320.08(5)(e), Fla. Stat. (1995). This separate treatment of ambulances reflects the Legislature’s determination that an ambulance is neither an automobile nor a truck, but rather' is a special purpose vehicle. Had the Legislature intended ambulances to come within the definition of motor vehicles in the franchised dealer law, sections 320.60-.70, it could have specifically included the category of “special purpose vehicles” therein. It did not.
An agency’s construction and interpretation of a statute which it is authorized by law to administer is entitled to great weight and will not be overturned unless clearly erroneous. Department of Ins. v. Southeast Volusia Hosp. Dist., 438 So.2d 815 (Fla.1983), appeal dismissed, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984). Any doubt as to whether a distributorship agreement is governed by the franchised dealer law should be resolved in favor of the right to freely contract. State v. British Leyland Motors, Inc., 290 So.2d 576 (Fla. 1st DCA 1974) (holding that the definitions in the franchised dealer law were unclear and construing them against the plaintiff).
In the instant case, resolving any doubts in favor of the freedom to contract, we find that the hearing officer’s interpretation of “motor vehicle” does not run afoul of the “clearly erroneous” standard.
AFFIRMED.
THOMPSON, J., concurs.
GRIFFIN, J., concurs specially, with opinion.

. See § 320.641(3), Fla. Stat. (1993) (allowing a motor vehicle dealer whose franchise agreement is cancelled or not renewed to file a petition within 90 days for a determination whether such action was unfair or prohibited). Any cancellation or nonrenewal of a franchise agreement is unfair "if it is not clearly permitted by the franchise agreement; is not undertaken in good faith; is not undertaken for good cause; or is based on an alleged breach of the franchise *663 agreement which is not in fact a material and substantial breach.” Id.

. The definition of "motor vehicle” found in section 320.60 is narrower than the definition of "motor vehicle” found in paragraph 320.01(l)(a), which provides:
(1) "Motor vehicle” means:
(a) An automobile, motorcycle, truck, trailer, semi-trailer, truck tractor and semitrailer combination, or any other vehicle operated on the roads of this state, used to transport persons or property, and propelled by power other than muscular power, but the term does not include traction engines, road rollers, such vehicles as run only upon a track, bicycles, or mopeds.
The broader definition cannot be used in this case, however, because section 320.60 requires that its own definitions be applied.