586 So.2d 397 (1991)
FLORIDA LEAGUE OF CITIES, INC., Town of Pembroke Park, and Village of Virginia Gardens, Appellants,
v.
ADMINISTRATION COMMISSION and Department of Community Affairs, Appellees.
TOWN OF PEMBROKE PARK, Appellant,
v.
STATE of Florida, ADMINISTRATION COMMISSION, Appellee.
VILLAGE OF VIRGINIA GARDENS, Appellant,
v.
STATE of Florida, ADMINISTRATION COMMISSION, Appellee.
TOWN OF PEMBROKE PARK, Appellant,
v.
STATE of Florida, ADMINISTRATION COMMISSION, and State of Florida, Department of Community Affairs, Appellees.
Nos. 90-854, 89-3056, 90-52, 89-3187, 90-43 and 90-975.
District Court of Appeal of Florida, First District.
August 27, 1991.
*399 Kraig A. Conn and Jane C. Hayman, Assistant General Counsel, Tallahassee, for appellant Florida League of Cities.
David J. Russ and Karen Brodeen, Asst. Gen. Counsel, Tallahassee, for appellee Dept. of Community Affairs.
Frank E. Matthews and Michael P. Petrovich, Hopping Boyd Green & Sams, Tallahassee, for appellant Town of Pembroke Park.
Jonathan Davidson and David M. Maloney, Executive Office of Governor, and John J. Rimes, II, Office of Atty. Gen., Tallahassee, for appellee Admin. Com'n.
*400 Ross A. McVoy, Barry F. Rose, Vivian F. Garfein and Carter N. McDowell, Fine Jacobson Schwartz Nash Block & England, Tallahassee, for appellant Village of Virginia Gardens.
BARFIELD, Judge.
The appeals in these six cases are brought by Florida League of Cities, Inc. (League), Town of Pembroke Park (Pembroke), and Village of Virginia Gardens (Village). All of the cases arise under the Growth Management Act, passed in 1985, and, in particular, the Local Government Comprehensive Planning and Land Development Regulation Act, sections 163.3161-163.3243, Florida Statutes (1985), which requires every municipality in the state to submit comprehensive plans to the Department of Community Affairs (DCA) by certain specific dates established for each municipality by FAC Rule 9J-11.008. If a plan is submitted late or not in compliance with the statutory requirements, the Administration Commission (Commission), composed of the Governor and Cabinet, imposes sanctions and/or specifies remedial action for the local government. The possible sanctions include a withholding of state funds from revenue sharing, grants, and other programs. With regard to this duty the Commission staff drafted a "Sanctions Policy" for use in cases of late submission and noncompliance, which was adopted by the Commission on October 24, 1989. The sanctions policies were first employed with regard to appellants Pembroke and Village. The appeals involving these two municipalities arise from the imposition of these sanctions, and the municipalities' unsuccessful attempts to receive a section 120.57, Florida Statutes, hearing on the sanctions issue. The League appeal arises from the League's unsuccessful attempt to challenge the sanctions policy of the Commission as an invalid rule. Pembroke, an intervenor in the League's rule challenge, also filed a notice of appeal.
On November 14, 1989, the League filed a petition for a section 120.56 rule challenge in which it challenged the validity of "certain unadopted, illicit rules of the Administration Commission" concerning the sanctions for noncompliance and nonsubmission of local comprehensive plans. The petition also sought a determination that section 163.3184(11), Florida Statutes (1989), constituted an illegal delegation of legislative power. Pembroke and Village, as petitioners, and the DCA, as respondent, successfully sought to intervene.
The petitioners asserted that the sanctions policies constituted rules under the definition of section 120.52(16), and that the policies and section 163.3184(11) were invalid delegations of legislative authority. The Commission denied that the policies were rules which were required to be adopted by section 120.54, or that the statute was unconstitutional. The DCA asserted that the policies were emerging agency action which did not have to be promulgated as rules at that time. The matter proceeded to final hearing on January 24, 1990. On March 2, 1990, the hearing officer issued a final order finding that the sanctions policies were not invalid rules which should have been adopted, that the sanctions policies were not subject to review in a 120.56 proceeding, and dismissing the petition.
Pembroke is a small municipality located in Broward County. Pursuant to FAC Rule 9J-12.006(4) its proposed comprehensive plan was due to be submitted to DCA for its initial compliance review October 1, 1988. The plan was not mailed by Pembroke to DCA until December 28, 1988, and was stamped as received by DCA January 9, 1989. By letter dated January 17, 1989, DCA advised Pembroke that the plan was not complete, and that the planning documents should not be transmitted until a public hearing was held in accordance with FAC Rule 9J-11.008(1)(a). The letter advised that the transmittal requirements should be met, and the omitted items provided. By letter dated January 23, 1989, the Commission advised Pembroke that DCA filed a notice that Pembroke was more than 90 days late in submitting its plan.
The letter also advised that the DCA notice requested the Commission to impose sanctions on Pembroke and set forth the procedure and deadlines which would be *401 employed in the determination of the issue. It directed Pembroke to file a response to DCA's notice within 30 days, and provided for a meeting to be conducted by the Administration Commission within 15 days which "will operate as an informal proceeding under section 120.57(2), F.S., unless the local government files with its response a substantiated allegation that the 90-day period has not yet elapsed." The letter further provided that within 20 days of the meeting DCA would file a recommendation as to the appropriate sanctions to be imposed, and that the Commission staff would then submit a proposed order to the Commission for final action.
On July 27, 1989, Pembroke submitted its four page response detailing the history, beginning in January 1987, of Pembroke's attempts to formulate its comprehensive plan. According to the response, Pembroke knew the plan was due October 1, 1988, but that its attorney spoke with a representative from DCA and concluded that the imposition of sanctions was "remote" due to "the complexity of the situation" and DCA's awareness of the difficulties Pembroke was experiencing completing the plan on time. According to the response, the completed plan was transmitted to DCA "in early March 1989."
On August 3, 1989, DCA sent a memorandum to the Commission detailing the state funding provided to Pembroke since 1987 to assist in its completion of its comprehensive plan, summarizing Pembroke's efforts to compile a plan, and recommending that Pembroke be sanctioned by withholding of annual state revenue sharing in an amount equal to the fraction of the year (5.3 months) that the plan was late. A copy of DCA's recommendation was provided for Pembroke. The DCA's cover letter explained that the DCA's recommendation was predicated on the March 10, 1989 receipt of the plan, five months late. The letter also directed any questions to the chief of the bureau of local planning.
A hearing was held on the matter before the Commission on September 26, 1989, at a regularly scheduled meeting of the Governor and Cabinet. Also before the Commission for possible sanctions for late submission were Indian Creek Village and the Village of Virginia Gardens. The attorney for Pembroke spoke on its behalf and asserted that the plan was submitted late and in an incomplete form, because of a series of errors by the planner hired to prepare it, and because of political turmoil and internal problems, Pembroke's elected officials were unaware of what was occurring. He asserted that since the deficiencies were brought to Pembroke's attention, it had worked diligently to remedy the problems and produce a proper plan which was submitted in March 1989. He also argued that the proposed sanction, amounting to $191,000, would be 10% of Pembroke's annual budget, and was a disproportionate sanction for the nature of the offense. He asked that $5,940 worth of revenue sharing be withheld instead. Also speaking before the Commission was one of Pembroke's commissioners, who reiterated the attorney's comments. Also speaking before the Commission was a representative of the Florida Audubon Society, and the Secretary of DCA, who urged the Commission to impose sanctions on the small communities whose plans were admittedly late and/or not in compliance.
The members of the Commission then undertook a discussion of how the statutory sanctions should be applied. The Governor favored an approach under which the state funding was withheld permanently, but the Treasurer indicated he preferred some method by which some of the funds might be released once the municipality was in compliance. The Commission could not agree how to proceed with regard to the three communities before it at that meeting and, noting that this was the first time it was considering the imposition of sanctions for failure to file a comprehensive plan, moved for staff to formulate a policy for the imposition of sanctions. The three items concerning the municipalities were deferred until the October 24 meeting.
On October 24 the sixth item on the agenda was the presentation of the staff's recommendation of a general policy for imposing sanctions for late submittal, followed *402 by the deferred consideration of the three municipalities' late submission of their plans. As part of the Commission's consideration of the proposed sanctions policy the League, DCA, Pembroke, and Village through their representatives, spoke briefly. The League and the two municipalities all objected to the promulgation of the policy without input from the affected local governments, and to the severity of the sanctions, and the Village of Indian Creek specifically argued that the policy constituted an unpromulgated rule. DCA responded that the policy was incipient and, as emerging policy, was not yet subject to rulemaking requirements. DCA pointed out that the local governments had requested notice of what the sanctions policy would be in the future, and that the policies would be applied to only 2 percent of the local governments required to submit plans. The Commission asked that DCA send notice by certified mail return receipt to the local elected officials, personally, immediately after a plan's deadline for submission passed, and that it further devise a policy by which the government would be advised that the matter was about to be brought before the Commission. It was then moved and passed that the policy be adopted.
The proposed orders imposing sanctions on Indian Creek and Village were adopted unanimously. There was a brief discussion regarding the application of the just-adopted policy to the three local governments who came before the Commission prior to the policy's adoption, but the Commission secretary pointed out the policy contained an express provision for the situation where the local government did not have advance notice of the policy. On behalf of Pembroke, one of its commissioners and its attorney spoke, and advised the Commission that the late submission of the plan resulted from a variety of factors, including the fact that the planner hired by Pembroke misrepresented its degree of completeness, that the mayor denied receiving any notice of the plan's due date, that it was not until January 1989 that Pembroke Commission discovered the plan due date had passed, that extensive political turmoil had ensued, and that once on notice of the requirements, the Pembroke Commission made a diligent effort to promptly submit a proper plan. Pembroke's Commissioner also acknowledged the plan's lateness, but asked that the Commission reconsider the harshness of the penalty. The Attorney General added, on behalf of the Pembroke, that it had undergone tremendous mismanagement in the past decade, and that the current local government should be credited with turning around Pembroke's image. He recommended that instead of calculating sanctions from the March 10, 1989 date when the plan was ultimately submitted in complete form, that they be calculated using the January 31, 1989 date as the date of submission, when an incomplete plan was submitted. By a vote of 3 to 4, the Commission voted to adopt the harsher, staff recommended sanction. Because section 163.3164 requires that the imposition of sanctions requires the affirmative vote of the governor and at least three other members, the 3 to 4 vote, in which the governor was in the minority, was insufficient for any action. After additional discussion two members in the majority agreed to change their vote and the final vote was 5 to 2, with the Governor in the majority, to adopt the proposed final order imposing sanctions.
The final order rendered November 1, 1989, finds that Pembroke submitted its plan 160 days after the due date, and provides that Pembroke will be denied 160/365 of the total state revenue sharing funds for fiscal year 1989-90, in the total amount of $190,299. The order further provides that 90/365 of the funds, $107,043, would be released to the Pembroke if the plan was ultimately found to be in compliance. The order further provided that Pembroke could seek judicial review of the order pursuant to section 120.68 by filing a notice of appeal within 30 days.
On November 14, 1989, Pembroke filed a Petition for Formal Administrative Hearing with the Commission. The petition asserted Pembroke had not been afforded any clear point of entry until the rendition of the final order imposing sanctions. The petition also pointed out that the final order *403 purports to withhold municipal gas tax funds despite the absence of any authority for the withholding of such funds in Chapter 163, Part II. Pembroke asserted its substantial interests were affected as the proposed sanction constituted 10% of its annual budget for fiscal year 1989, and that disputed issues of material fact existed with regard to the proper submittal date, the imposition of sanctions for the first 90 days a plan is late, the uniform application of the sanctions policy and the adequacy of the notice afforded to Pembroke.
On November 17, 1989, Pembroke filed a notice of appeal to this court of the November 1 final order imposing sanctions.
Pembroke's petition for formal administrative hearing was placed on the agenda for the December 5, 1989 meeting of the Commission as item 4. Village had also filed a petition, and was placed on the agenda as item 3. The attorneys representing the municipalities spoke briefly, and the Commission then voted unanimously to adopt the staff's proposed order denying the petitions. A final Order Denying Petition was rendered December 8, 1989. On January 4, 1990, Pembroke filed a notice of appeal to this court.
On March 23, 1990, this court remanded the final order imposing sanctions in order to allow the Commission to omit the previous provision for the withholding of municipal gas tax revenues. The total amount of revenue sharing withheld was reduced from $190,299 to $168,006. An amended final order to this effect was rendered April 13, 1990.
Village is a small municipality located in Dade County. Pursuant to FAC Rule 9J-12.006(1) its proposed comprehensive plan was due to be submitted to DCA for its initial compliance review by July 1, 1988. The plan was not sent to DCA until January 27, 1989, and was stamped received by DCA February 6, 1989. On July 11, 1988, DCA wrote Village advising that the required plans had not been submitted by the July 1 due date. In the letter DCA acknowledged that Village's planner had advised that the plan would be ready in approximately one month, and DCA reminded Village of the requirements for submission. On October 7, 1988 DCA provided "formal notice" by letter that the South Florida Regional Planning Agency was being requested by DCA to prepare and submit Village's plan, which was now more than 90 days late. On December 19, 1988, DCA advised the Commission that the Village plan was over 90 days late and requested that the Commission impose sanctions. By letter dated January 3, 1989, the Commission advised Village that the DCA had filed notice that Village was more than 90 days late submitting its plan. The letter also advised that the DCA notice requested the Commission to impose sanctions on Village, and set forth the procedure and deadlines which would be employed in the determination of the issue. It directed Village to file a response to DCA's notice within 30 days, and provided for a meeting to be conducted by the Commission within 15 days which, "will operate as an informal proceeding under section 120.57(2), F.S., unless the local government files with its response a substantiated allegation that the 90-day period has not yet elapsed." The letter further provided that within 20 days of the meeting DCA would file a recommendation as to the appropriate sanctions to be imposed, and that the Commission staff would then submit a proposed order to the Commission for final action. The Village plan was adopted and transmitted to DCA January 27-February 6, 1989.
On January 30, 1989, Village's chief administrator filed a "Response to the Department of Community Affairs Notice" stating that the plan had not been timely submitted "due to oversight and error on the part of the consulting staff member." By letter dated February 13, 1989, DCA advised Village that its plan, as submitted, omitted numerous elements required by the statutes. The letter asked that the missing items be supplied no later than Feb. 27, 1989. In a memorandum dated June 20, 1989 the secretary of DCA advised the Commission that two municipalities, Indian Creek Village and the Village of Virginia Gardens, had failed to submit their plans by the July 1, 1988, due date. The Village of Virginia Gardens had not supplied the items missing from its plan as of June 20, *404 and further had failed to supply DCA with the minutes of meetings requested by DCA to substantiate Village's explanation that the late submission was solely the fault of Village's chief administrator. The memo detailed the funding provided to Village since 1987 to assist in the completion of the comprehensive plan, and recommended that Village be sanctioned by a withholding of state revenues equivalent to the fraction of the year that the plan was late. In the case of Village, the recommendation was that .6 of the funding (7.2 months) be withheld. On August 7, 1989 the South Florida Regional Planning Council completed and submitted the plan for Village.
By letter dated August 22, 1989 the Commission advised Village that DCA had submitted its proposed sanctions that it requested the Commission impose on Village. The letter stated that the DCA recommendation would be taken up at a regularly scheduled meeting conducted by the Commission on September 14, 1989 "which will serve as the City's opportunity to be heard in accordance with Section 120.57, Florida Statutes." The letter also advised of the time and location of the September 6 Cabinet Aide's meeting, and advised that Village could appear and make presentations at either, or both, meetings.
Apparently the matter was rescheduled for a September 26 Commission meeting, with the Aide's meeting being held September 20. Village did not appear for the Aide's meeting, but the mayor sent a letter to be read which pointed out the small size and limited resources of Village and stated that the late submission was the result of the planner misrepresenting the completeness of the plan, and that Village had diligently attempted to cooperate with the local and state agencies involved and submit a complete plan in compliance with all the requirements.
At the September 26 Commission meeting Village was on the agenda for possible sanctions for late submission as was Pembroke and Indian Creek Village. Appearing on behalf of Village were its city attorney and mayor. Both asserted that the penalty proposed by DCA was too harsh for such a small municipality, and that the late submission had been unintentional and that Village was already in compliance with the intent of the Growth Management Act. The members of the Commission then undertook a discussion of how the statutory sanctions should be applied. The Governor favored an approach under which the state funding was withheld permanently, but the Treasurer indicated he preferred some method by which some of the funds might be released once the municipality was in compliance. The Commission could not agree how to proceed with regard to the three communities before it at that meeting and, noting that this was the first time it was considering the imposition of sanctions for failure to file a comprehensive plan, moved for staff to formulate a policy for the imposition of sanctions as discussed above with respect to Pembroke.
Following discussions and comments by the representatives of the municipalities and the League as discussed above, the proposed orders imposing sanctions on Indian Creek and Village were adopted unanimously without further discussion. The final order rendered November 1, 1989, finds that Village submitted its plan 220 days late, and provides that Village will be denied 220/365 of the total state revenue sharing funds for fiscal year 1989-90, in the total amount of $92,767. The order provides that 90/365 of the funds, $37,950, would be released to Village if the plan was ultimately found to be in compliance. The order further provides that Village could seek judicial review of the order pursuant to section 120.68 by filing a notice of appeal within 30 days.
On November 14, 1989, Village filed a Petition for Formal Administrative Hearing with the Commission. The petition followed the course of the petition of Pembroke and resulted in an amended final order reducing the amount of revenue sharing withheld from $92,767 to $83,089.
Pembroke, an intervenor in the League's rule challenge to the Commission sanctions policy, also filed a notice of appeal of the final order of the Division of Administrative Hearings finding that the sanctions policies were not invalid rules which should have been adopted and that the policies were therefore not subject to 120.56 rule challenge and dismissing the petition. The *405 six cases involving the rule challenges, the appeal of sanctions and the denial of petitions for formal hearings, have all been consolidated for review.
The issues for review under the rule challenges are as follows:
I. The "sanctions policies" adopted by the Administration Commission constitute rules which were required to be adopted in accordance with Sec. 120.54, Fla. Stat.
A. The sanctions policies adopted by the Administration Commission on October 24, 1989, are or were intended to be generally applicable and impose requirements not specifically required by statute or by an existing rule and, therefore, constitute rules as defined in Sec. 120.52(16), Fla. Stat. (1989).
B. The sanctions policies are generally applicable.
C. The "sanctions policies" are intended by their own effect to create rights, to require compliance or otherwise to have a direct and consistent effect of law.
II. The sanctions policies cannot be considered to be incipient or emerging under the authority of McDonald v. Department of Bank and Finance because said policies are solidified and substantially-affected persons are not given a full opportunity to challenge the application of the policies pursuant to Sec. 120.57, Fla. Stat.
III. The "noncompliance policy" constitutes an invalid exercise of delegated legislative authority pursuant to Sec. 120.52(8)(C), Fla. Stat., by impermissibly imposing sanctions beginning with the date that the Department of Community Affairs issues a notice to find a plan not in compliance in contravention of Sec. 163.3184, Fla. Stat., which provisions contemplate that sanctions will not begin until after a local government has failed to complete remedial actions specified by the Administration Commission pursuant to Sec. 163.3184(11), Fla. Stat.
IV. The "noncompliance policy" constitutes an invalid exercise of delegated legislative authority pursuant to Sec. 120.52(8)(C), Fla. Stat., because the provisions relating to when the sanctions begin to run contravene the clear legislative intent of Sec. 163.3184 by infringing upon a municipality's exercise of its statutory rights to a hearing before a hearing officer and the Administration Commission.
V. The "non-submission policy" constitutes an invalid exercise of delegated legislative authority pursuant to Sec. 120.52(8)(C, Fla. Stat., by impermissibly calculating sanctions "from the first day after the due date established by the Department of Community Affairs Rule 9J-12, F.A.C... ." in contravention of Sec. 163.3167(2), Fla. Stat., which states that a municipality or county that fails to submit its plan and is late "... by more than 90 days shall be subject to sanctions."
VI. The "sanctions policies" constitute an invalid exercise of delegated legislative authority pursuant to Sec. 120.52(8)(C), Fla. Stat., by mandating that revenue sharing be withheld in contravention of Sec. 163.3184(11), Fla. Stat., which allows the Commission to exercise discretion in whether to impose sanctions.
VII. Florida Statutes, Sec. 163.3167(2) and 163.3184(11)(a) unlawfully delegate the uniquely legislative power of determining the nature and extent of fines which may be assessed.
The issues in the municipalities appeals from the imposition of sanctions and denial of petition for formal hearing, are as follows:
I) Disputed issues of material fact exist concerning the Commission's action in which the municipalities have not been afforded the opportunity to present evidence and legal argument.
II) The municipalities were never afforded a clear point of entry into the administrative process.
III) Sections 163.3167(2) and 163.3184(11)(a), Florida Statutes, are unlawful delegations of legislative power.
IV) The Commission unlawfully exercised its statutory authority in its policy and its actions toward the municipalities.
In the first point addressed to rule challenge, appellants argue that the "sanctions *406 policy" adopted by the Administration Commission on October 24, 1989 constitutes rules which must be adopted in accordance with section 120.54. We disagree.
Section 120.52(16) provides in pertinent part:
"Rule" means any agency statement of general applicability that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule ...
The seminal case interpreting section 120.52(16), and addressing at what point an agency policy statement constitutes a rule which must be duly promulgated as such by the agency, is McDonald v. Dept. of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977), appeal after remand, 361 So.2d 199 (Fla. 1st DCA 1978), cert. denied, 368 So.2d 1370 (Fla. 1979). McDonald provides:
The APA does not chill the open development of policy by forbidding all utterance of it except within the strict rulemaking process of section 120.54... .
... .
... [T]he Section 120.54 rulemaking procedures are imposed only on policy statements of general applicability, i.e., those statements which are intended by their own effect to create rights, or to require compliance, or otherwise to have the direct and consistent effect of law... .
While the Florida APA thus requires rulemaking for policy statements of general applicability, it also recognizes the inevitability and desirability of refining incipient agency policy through adjudication of individual cases. There are quantitative limits to the detail of policy that can effectively be promulgated as rules, or assimilated; and even the agency that knows its policy may wisely sharpen its purposes through adjudication before casting rules.
(emphasis in original, footnote omitted) 346 So.2d at 580-581. The continuing viability of McDonald is acknowledged by several recent decisions. See e.g.: Rabren v. Dept. of Professional Regulation, 568 So.2d 1283 (Fla. 1st DCA 1990); Florida Optometric Ass'n v. Dept. of Professional Regulation, Board of Opticianry, 567 So.2d 928 (Fla. 1st DCA 1990); Florida Public Service Commission v. Central Corp., 551 So.2d 568 (Fla. 1st DCA 1989).
Agency policy is incipient or evolving (and therefore exempt from rulemaking) when the agency has not yet "solidified" its position on policy in a particular area, and instead seeks to exercise its authority on a case-by-case basis until it has focused on a common scheme of inquiry derived through experience gained from adversary proceedings. City of Tallahassee v. Florida Public Service Commission, 433 So.2d 505 (Fla. 1983). Rulemaking cannot be forced upon an agency and its policy may be developed, at the agency's choice, through the adjudication of individual cases. Rabren v. Dept. of Professional Regulation; Florida Public Service Commission v. Central Corp.
The sanctions policy fits the definition of incipient or evolving policy, and not the section 120.52(16) definition of a rule. With regard to the provisions of section 120.52(16), the policy isn't one of "general applicability" as it applies only to municipalities who are late or not in compliance in submitting their comprehensive plans. Every municipality in the state subject to the requirements of the Growth Management Act is potentially subject to the policy, but only those which fail to comply with the statutory and rule requirements will actually be considered for application of the policy. The policy has been applied, for the first time, to the first municipalities to ever come before the Administration Commission for "nonsubmission." On the record before this court, the "noncompliance" portion of the policy has never been applied to any one at all. The sanctions policy is also not one of "general applicability" because it is not intended by its own effect to create rights or to require compliance. The rights afforded and compliance required are the product of the statutes.
*407 The sanctions policy arguably "implements" or "interprets" law or policy as it sets forth the starting point for the Commission's consideration of the statutory penalties detailed in section 163.3184(11)(a). But as McDonald points out, such a literal reading of the statutory definition of "rule" would "encompass virtually any utterance by an agency." 346 So.2d at 581, quoting Pacific Gas & Elec. Co. v. Federal Power Commission, 506 F.2d 33, 37 (D.C. Cir.1974). The discussions of the Commission, as well as the manner in which the policy was employed as to each of the municipalities, clearly indicates that the sanctions policy is merely a guideline, or a starting point, for the Commission's consideration of the imposition of sanctions in each particular case. Here, the particular circumstances of the late submission of each municipality were considered individually. The case of the Town of Pembroke Park, in particular, was discussed at length, and the possible imposition of less-stringent sanctions was expressly considered and even voted upon. Ultimately, the basic sanctions set forth under the policy were imposed. The quantum of the sanctions varied depending upon how late the belated submission was found to have been. The fact that policy sanctions were applied to all three municipalities is not surprising given the fact that they all submitted virtually identical reasons for the late submission: mistakes and/or misrepresentations by the hired planner, as well as virtually identical mitigating factors upon which the pleas for mercy were based: the small size of the municipality and the resultant harsh effect of the proposed sanction, and the diligent effort of the municipal officials to comply with the law once the nonsubmission was discovered.[1] Given the similarity of excuses, a similarity of the basic sanctions was within the Commission's discretion.
For the same reasons, the policy is clearly an evolving one, which is intended to be utilized to differing extents on a case-by-case basis as described in City of Tallahassee v. Florida Public Service Commission. The hearing officer's conclusion and dismissal was correct.
In their second point addressed to the rule challenge, appellants argue that the sanctions policy cannot be regarded as incipient or emerging under McDonald because the policies are solidified and the parties are not afforded a full opportunity to challenge the application of the policy. We disagree. The sanctions policy is not "solidified" to the point that it cannot be regarded as evolving as discussed above.
Appellants also argue that the policy does not afford substantially affected parties a clear point of entry to pursue section 120.57 proceedings. This argument has merit with regard to the Administration Commission's actions concerning the particular municipalities before this court in these appeals. However, the sanctions policy itself makes no attempt to speak to the hearing procedures. The fact that the parties stipulated, "The potential loss of revenue for a period of six or more months may act as a substantial disincentive to a municipality's willingness to pursue a hearing and challenge the Department of Community Affairs when the Department has issued a Notice of Noncompliance" does not alter the fact that the policy itself does not address adjudication. Whatever "disincentive" the statutorily created sanctions may pose to pursuit of section 120.57 proceedings, they arguably pose a greater disincentive to the filing of plans late or not in compliance. Any disincentive is of statutory origin, and not from the policy. As noted, whether or not the particular municipalities involved in these appeals were properly afforded a clear point of entry is a separate issue addressed in those particular cases.
In their third point addressed to the rule challenge, appellants argue the noncompliance *408 portion of the sanctions policy constitutes an invalid exercise of delegated legislative authority as it imposes sanctions as of the date the DCA issues its notice of noncompliance, rather than waiting until after the local government has failed to complete remedial actions as specified in section 163.3184(11). We disagree.
Section 163.3184(8) provides for the DCA to make a determination within 45 days of submission whether a plan is or is not in compliance. If the DCA finds the plan is not in compliance, section 163.3184(10) provides that the DCA issues a notice of intent to find the plan not in compliance which is forwarded to the Division of Administrative Hearings for a 120.57 hearing. The hearing officer's recommended order is then submitted to the Administration Commission for final agency action. At this point, if the Commission finds the plan not in compliance, under section 163.3184(11), it must specify remedial actions, and may impose sanctions.
Section 163.3184(11)(a) provides:
(11) ADMINISTRATION COMMISSION 
(a) If the Administration Commission, upon a hearing pursuant to subsection (9) or subsection (10), finds that the comprehensive plan or plan amendment is not in compliance with this act, the commission shall specify remedial actions which would bring the comprehensive plan or plan amendment into compliance. The commission may direct state agencies not to provide funds to increase the capacity of roads, bridges, or water and sewer systems within the boundaries of those local governmental entities which have comprehensive plans or plan elements that are determined not to be in compliance. The commission order may also specify that the local government shall not be eligible for grants administered under the following programs:
[Subsections 1. through 3. set forth the specific programs and revenue sharing sources.]
(Emphasis added.) The statute plainly directs that remedial actions are mandatory, and that the Commission's imposition of the authorized sanctions is optional and within the Commission's discretion.
The October 24, 1989 sanctions policy provides that once a plan is determined to be not in compliance, "the Commission policy would be to withhold 1/365 of the annual state/local revenue sharing distribution for every day that the plan is out of compliance beginning with the date DCA issued its Notice of Intent ..." until the amended plan is found to be in compliance by the DCA.
If the DCA initially finds a plan in compliance and issues its notice accordingly but, following 120.57 hearing, the Commission instead determines the plan is not in compliance, the sanctions policy provides that the Commission's final order will specify remedial measures to be incorporated by a specific date. If they are not incorporated by that date, 1/365 of the annual state/local revenue sharing distribution will be withheld for every day the plan is out of compliance, beginning with the date the Commission entered its final order until the plan is found to be in compliance by the DCA.
Appellants apparently challenge only the first part of the policy, concerning the imposition of sanctions when both the DCA and then the Administration Commission find the plan not in compliance. Appellants argue sanctions should not be calculated and imposed as of the date of the DCA notice of intent to find the plan not in compliance. Instead, appellants argue the statute represents a clear legislative intent to not impose any sanctions until the local government has failed to comply with the mandated remedial action set forth in the Administration Commission's final order. We do not find any support for this argument in the statute.
Section 163.3184(10)(a) provides that during the administrative hearing held after the DCA has issued its notice of intent to find the plan not in compliance, "the local government's determination that the [plan] is in compliance is presumed to be correct." Section 163.3167(2) provides that the local government submit a "complete proposed comprehensive plan" by the due date. *409 Nothing in the statutes addresses from which point in time the sanctions imposed should be calculated. The manner of the imposition of sanctions is clearly a matter left to the discretion of the Administration Commission by section 163.3184(11)(a). Assuming appellants have any standing to challenge the Commission's policy which has yet to be applied to any local government, we do not think appellants have shown that the policy constitutes an invalid exercise of delegated legislative authority.
As the hearing officer found, section 163.3184(11)(a) clearly seems to contemplate that once the Commission determines a plan is not in compliance, it will issue one final order addressing remedial actions and sanctions. There is no basis in the statute for concluding that sanctions should not be calculated and applied until a local government has failed to comply with the remedial measures ordered. On the contrary, the statute clearly provides that the plans are to be submitted, in compliance, on their due dates. Any plan which is submitted not in compliance, is not in compliance from that day forward. The Administration Commission would be within its discretion in imposing sanctions for noncompliance as of the submittal date. The fact that the statute refers to the plan being presumed correct is a procedural, not a substantive directive. Section 163.3184(10)(a) merely sets forth the relative burdens of proof in the 120.57 hearing to be conducted upon the DCA's determination of noncompliance. The local government does not have to prove its plan is in compliance; the state must prove it is not. The sanctions policy provision for the imposition of sanctions as of the date of the DCA Notice of Intent is not contrary to any provision in the statute, and is not an invalid exercise of delegated legislative authority.
In their fourth point addressed to the rule challenge, appellants argue the noncompliance policy is an invalid exercise of delegated legislative authority as the Commission acknowledges it poses a disincentive to the local governments to pursue their statutorily afforded right to a 120.57 hearing. We disagree.
Prior to the administrative hearing the parties stipulated, "The potential loss of revenue for a period of six or more months may act as a substantial disincentive to a municipality's willingness to pursue a hearing and challenge the Department of Community Affairs when the Department has issued a Notice of Noncompliance."
Any actual imposition of sanctions will not occur until after a 120.57 hearing has been held, and a final determination of noncompliance has been made by the Administration Commission. Only at this point are sanctions imposed. The policy only poses a "substantial disincentive" to those local governments whose plans are not in compliance for a substantial period of time. Any government whose plan is in compliance, or whose plan is out of compliance for only a brief period of time, would not be subject to extensive sanctions. Therefore, it would be more accurate to regard the policy as a substantial disincentive to noncompliance, particularly extended noncompliance. As such, it is consistent with the intent of the Growth Management Act. The disincentive aspect of the sanctions is analogous to a situation involving a criminal defendant. The possibility that an accused may face incarceration if he exercises his right to a jury trial and is found guilty cannot be viewed as a "substantial disincentive" to the exercise of that constitutional right, unless, of course, he is guilty. The possibility of incarceration is intended as a substantial disincentive to the criminal behavior itself. Similarly, the imposition of sanctions is a disincentive to noncompliance, and not to the pursuit of a 120.57 hearing on the issue of noncompliance.
In their fifth point addressed to the rule challenge, appellants assert that the fact that section 163.3167(2)(b) provides for the imposition of sanctions for late submission only if the plan is more than 90 days late precludes the Commission from calculating sanctions for days 1-90. We disagree. The pertinent portion of section 163.3167(2)(b) provides:
Any county or municipality that fails to meet the schedule set for submission of *410 its proposed comprehensive plan by more than 90 days shall be subject to the sanctions described in s. 163.3184(11)(a) imposed by the Administration Commission.
In the proceedings below the appellants and others consistently and erroneously referred to the statutory provision of a "90-day grace period." The statute does not provide a grace period. It merely sets forth the threshold degree of tardiness which will warrant the imposition of sanctions. Plans submitted beyond their due date, but less than 90 days late are nevertheless late; but the local government escapes sanctions. Plans submitted more than 90 days late were late as of midnight on their due date, not as of day 91. The imposition of sanctions calculated as of the first day is in no way contrary to the statute or its intent.
In their sixth point addressed to the rule challenge, appellants argue that contrary to the statute's use of the permissive "may" in discussing the Administration Commission imposition of sanctions, the sanctions policy mandates the withholding of revenue sharing in every case and improperly precludes the exercise of any discretion. We disagree.
Nothing in the policy itself states that it is mandatory or utilizes commonly accepted mandatory words such as "shall." In fact, in keeping with its nature as a non-mandatory "starting point" type of policy, the provisions are written in a grammatically concise, somewhat abbreviated form. The dialog at the Commission meetings on September 26 and October 24, 1989, clearly establishes that the Commission intends for the policy to serve as a general guideline and starting point to be employed in a case-by-case basis as the local governments appear before it on the grounds of having submitted their plans late and/or not in compliance. There is nothing explicit, either in the policy itself, or in the transcripts of the Commission meetings discussing its adoption, which indicates the policy is to be inflexibly applied. The only indications are to the contrary. To the extent that the policy presupposes that sanctions will be imposed for late submittal or noncompliance, the hearing officer correctly found this posture to be reasonable, particularly given the mandatory nature of the Growth Management Act requirements.
In their final point addressed to the rule challenge, appellants argue that sections 163.3167(2) and 163.3184(11)(a) are unconstitutional delegations of legislative authority as only the legislature can properly determine the nature and extent of the fines to be assessed. We disagree.
The legislature cannot delegate the power or authority to enact or declare law, and cannot delegate unrestricted discretion in the application of law. State v. Cain, 381 So.2d 1361 (Fla. 1980). The doctrine of nondelegation does not preclude the exercise of all agency discretion. Solimena v. State, Dept. of Business Regulation, Division of Pari-Mutuel Wagering, 402 So.2d 1240 (Fla. 3d DCA 1981), rev. den., 412 So.2d 470 (Fla. 1982). To determine whether a delegation is invalid the court examines whether the transfer of authority was possible, and if so, whether it was sufficiently restrictive. State, Dept. of Citrus v. Griffin, 239 So.2d 577 (Fla. 1970), appeal after remand, 257 So.2d 116 (Fla. 2d DCA 1972), cert. dismissed, 266 So.2d 36 (Fla. 1972). These factors must be tempered by due consideration for the practical context of the problems sought to be remedied or the policy sought to be effected. Id. So long as the agency is following the legislative purpose, there is no invalid delegation. Solimena. See also McRae v. Robbins, 151 Fla. 109, 9 So.2d 284, 290-291 (1942) (Justice Whitfield concurring).
In these cases the delegation of discretionary authority on the issues of sanctions was proper. Section 163.3184(11) specifies the general nature of the sanctions in subsection (a): "The commission may direct state agencies not to provide funds to increase the capacity of roads, bridges or water and sewer systems within the boundaries of those local governmental entities ..." Subsection (a)1. through 3. specifies additional particular grant programs for which eligibility may be terminated as a sanction. If the local government's plan was one of the ones required to contain a *411 coastal management element, subsection (b) provides an additional funding sanction under a particular statute. Section 163.3184(11) therefore sets forth the range of sanctions available with specificity. Section 163.3167(2)(b) further limits the imposition of any sanctions for late filing only to those local governments which fail to file their plans within 90 days of its due date. Section 163.3184(11)(a) mandates the Commission to specify remedial actions for any plan determined by the Commission to be not in compliance; the provision of remedial measures is not a matter of discretion.
Article I, section 18 of the Florida Constitution provides: "No administrative agency shall impose a sentence of imprisonment, nor shall it impose any other penalty except as provided by law." The Commission's discretionary authority to impose sanctions has been duly conferred by law, and the statute provides appropriate guidelines for the exercise of that authority.
In determining whether the legislature has improperly delegated discretion to the agency, we must consider whether the statute establishes standards and guidelines which direct the agency in implementing the law... . When "neither the agency nor the courts can determine whether the agency is carrying out the intent of the legislature", unlawful delegation of legislative power may result.
Solimena v. State, Dept. of Business Regulation, Division of Pari-Mutuel Wagering, 402 So.2d at 1245 (citations omitted).
The imposition of sanctions for a local government's failure to submit a plan on time or in compliance is a matter which could be addressed only on a case-by-case basis. The human factor in such failures would make it impossible for the legislature to provide a more precise or detailed manner of imposing sanctions which would be equitable in each of the myriad possible circumstances. The practical difficulty of the legislature attempting to address "fluid conditions" has been recognized by the courts. In State, Dept. of Citrus v. Griffin, the supreme court pointed out:
Obviously, the very conditions which may operate to make direct legislative control impractical or ineffective may also, for the same reasons, make the drafting of detailed or specific legislation impractical or undesirable... .
... [I]t should be remembered that our Constitution does not deny to the Legislature necessary resources of flexibility and practicality, and when a general approach is required, judicial scrutiny ought to be accompanied by recognition and appreciation of the need for flexibility.
239 So.2d at 581. See also Brewer v. Insurance Commissioner and Treasurer, 392 So.2d 593 (Fla. 1st DCA 1981) (the legislature may not delegate the power to say what the law is, but it may enact laws which leave some discretion in the operation and enforcement of the law with an administrative official); and Conner v. Joe Hatton, Inc., 216 So.2d 209 (Fla. 1968), appeal after remand, Joe Hatton, Inc. v. Conner, 240 So.2d 145 (Fla. 1970) (the distinction is between the delegation of power to make law and the conferring of authority or discretion in executing the law pursuant to and within the confines of the law itself).
The Commission is executing and enforcing law within the specific parameters placed by the legislature on the exercise of its discretion. The only possible basis for a finding of unconstitutionality is the fact that the statutes do not expressly limit the duration of the sanctions imposed. Absent any such limitation, theoretically a local government which submits a plan late or not in compliance could be subject to state revenue loss indefinitely. However, the wording of the statutes sufficiently limit the duration of any sanctions imposed. With regard to late submissions, section 163.3167(2)(b) provides that sanctions may be imposed as described in section 163.3184(11)(a) if a plan is more than 90 days late. It is inherent in the statute that the sanctions will terminate once a plan is submitted. This is also what the sanctions policy adopted by the Commission provides. However, the statutes do not place any express limitation on the duration of sanctions for nonsubmission. With regard to sanctions for noncompliance, section 163.3184(11)(a) *412 clearly contemplates that such sanctions will be imposed only for the duration of the noncompliance. There is no statutory authority for the imposition of sanctions on a local government whose plan is in compliance. But theoretically the Commission, during the period of noncompliance, could order a permanent forfeiture of all designated state funding by the local government.
Any penalty imposed by an administrative agency cannot be the subject of judicial review so long as its imposition is supported by competent substantial evidence and the penalty itself is within the statutory range as prescribed by law. Florida Real Estate Commission v. Webb, 367 So.2d 201 (Fla. 1978); Decola v. Castor, 519 So.2d 709 (Fla. 2d DCA 1988); Lee v. Division of Florida Land Sales and Condominiums, 474 So.2d 282 (Fla. 5th DCA 1985). Statutes prescribing penalties typically place a maximum limit on the dollar amount of a fine or the temporal duration of the sanction. See e.g., Florida Real Estate Commission v. Webb, (maximum 2-year real estate license suspension under § 475.25(1), Fla. Stat. (1975)); Decola v. Castor, (maximum 10-year teaching certificate revocation under § 231.28(1), Fla. Stat.); Lee v. Division of Florida Land Sales (maximum $10,000 fine for violations under § 498.049(4), Fla. Stat. (1983)).
The statutes in the instant case do not give the Administration Commission unfettered discretion in the type of sanction to be imposed, but the statutes do fail to place any express limits on the duration or maximum amount of such sanctions. However, the statute does set forth implied limits on the duration of any sanction based on its requirement that, sooner or later, all plans due will be submitted and/or brought into compliance, thereby eliminating the basis for any imposition of sanctions. It is well-established that all statutes are presumed constitutional, and that if there is any reasonable way that a statute can be construed not to conflict with the constitution, it must be so construed. Firestone v. News-Press Pub. Co., Inc., 538 So.2d 457 (Fla. 1989); Sandlin v. Criminal Justice Standards & Training Commission, 531 So.2d 1344 (Fla. 1988); Vildibill v. Johnson, 492 So.2d 1047 (Fla. 1986); Felts v. State, 537 So.2d 995 (Fla. 1st DCA 1988), approved, 549 So.2d 1373 (Fla. 1989); Southeast Volusia Hosp. v. State, Dept. of Ins., 478 So.2d 820 (Fla. 1st DCA), rev. denied, Tallahassee Memorial Regional Medical Center v. Florida Patients Compensation Fund, 476 So.2d 676 (Fla. 1985). All reasonable doubt must be resolved in favor of constitutionality. Bunnell v. State, 453 So.2d 808 (Fla. 1984); Industrial Fire & Cas. Ins. Co. v. Kwechin, 447 So.2d 1337 (Fla. 1983); Felts v. State. Applying this standard to sections 163.3167 and 163.3184, they are not an unlawful delegation of legislative authority.
Of the four issues addressing the imposition of sanctions and denial of section 120.57 hearing raised by the municipalities the third issue alleging unlawful delegation of legislative authority has been discussed and rejected above.
The municipalities' first issue concerning disputed issues of fact is without merit. While the facts concerning the two municipalities differ somewhat, neither showed the existence of material facts in dispute.
In their fourth point, the municipalities argue that the Administration Commission unlawfully exercised its statutory authority in applying its sanctions policy in several respects. First, they argue the Commission failed to comply with the mandatory provisions of section 163.3184(11)(a) and "specify remedial actions." We disagree. They were before the Commission for submitting their plans late: "nonsubmission." The Commission never made any determination whether the plans were or were not in compliance. The statute clearly requires the Commission to specify remedial actions for plans determined to be "not in compliance with this act," upon the conclusion of a 120.57 hearing as provided in section 163.3184(9) or (10). The municipalities' proceedings before the Commission never progressed to this point. No noncompliance determination was made, and no remedial actions were to be specified. In any event, there is only one remedial *413 action available for nonsubmission, and that is submission.
Second, they argue the Commission applied automatic sanctions in contravention of statutory directive that it "may" direct the withholding of state funds. This argument is clearly refuted by the record. Pembroke's case in particular was the subject of extensive discussion by the Commission, and the amount of sanction was voted upon twice. The transcript of the meetings demonstrate indisputably that the sanctions were imposed pursuant to an exercise of discretion, and not automatically.
Third, they argue the Commission cannot impose sanctions for the first 90 days the plan a late. Nothing in section 163.3167(2)(b) indicates any statutory intent to afford a 90 day grace period.
Last, they argue that Florida Real Estate Commission v. Webb, 367 So.2d 201 (Fla. 1978), which precludes judicial review of any administrative penalty which is within the statutory range, does not preclude this court from reviewing the penalties in the instant cases. They argue the penalties are improperly based upon an erroneous finding of fact, and that the absence of legislative guidelines and imposition of sanctions within the 90 day grace period are beyond the Commission's discretion.
If there are no erroneous findings of fact and no 90 day grace period, then Webb precludes review of the extent of the sanctions imposed as they are within the specified statutory range. However, we need not reach this issue in view of our disposition of the parties' second issue discussed below.
In their second point, the municipalities argue they were never afforded a clear point of entry into the administrative process because they were not provided adequate notice of their right to seek an administrative hearing because the notices contained in the January 3 and January 23, 1989 letters were inadequate, and because they never waived their right to a 120.57 hearing. The Commission agrees that substantial interests warranting the application of section 120.57 are involved, and the parties agree that the determination of the issues turns on the provisions of the January 3 and January 23, 1989 letters from Patricia Woodworth, Secretary of the Administration Commission to the mayors of the municipalities.
Any substantially affected person must be provided with a clear point of entry, within a specified time period after some recognizable event in the investigatory or other free form proceedings, to formal or informal proceedings under section 120.57. Capeletti Brothers, Inc. v. State, Department of Transportation, 362 So.2d 346, 348 (Fla. 1st DCA 1978), cert. den., State, Department of Transportation v. Capeletti Bros., Inc., 368 So.2d 1374 (Fla. 1979). Simply providing a point of entry, however, is not enough if the point of entry is so remote from the agency action as to be ineffectual as a vehicle for affording a party whose substantial interests are or will be affected by agency action a prompt opportunity to challenge disputed issues of material fact in a 120.57 hearing. General Development Utilities, Inc. v. Florida Department of Environmental Regulation, 417 So.2d 1068, 1070 (Fla. 1st DCA 1982). Notice of agency action which does not inform the affected party of its right to request a hearing and the time limits for doing so is inadequate to trigger the commencement of the administrative process. Henry v. State, Department of Administration, Div. of Retirement, 431 So.2d 677, 680 (Fla. 1st DCA 1983). Until proceedings are had satisfying section 120.57, or an opportunity for them is clearly offered and waived, there can be no agency action affecting the substantial interests of a person.
We agree with appellants that the letters are insufficient to provide the requisite clear points of entry. At the time no rules had been promulgated governing the procedure for the determination of nonsubmission matters, which appellee concedes involved the determination of substantial interests of a party. When an agency has not adopted its own specific rules of procedure, FAC Rule 28-5.101 provides that the procedure set forth in that chapter applies. *414 In particular, Rule 28-5.111, entitled "Point of Entry into Proceedings" provides that a substantially affected party has 21 days to file a petition upon receipt of written notice of the decision, or receipt of written notice of intent to render such decision. The rule specifies that "whenever possible" the agency shall issue a notice of intent prior to the actual decision, to allow the affected person 21 days to request a hearing. The letters call for a "response" to be submitted within 30 days, and provides that an informal 120.57 proceeding will be held within 15 days "unless the local government files with its response a substantiated allegation that the 90-day period has not yet elapsed." Although this procedure was subsequently promulgated as a rule (see FAC Rules 28-39.001  28-39.006), those rules were not effective until August 7, 1989, approximately 7 months after the letter at issue was written.[2]
The letters not only failed to provide 21 days to seek a hearing as required by Rule 28-5.111, they also do not provide any basis for the affected parties to seek formal or informal proceedings. Fortune Life Ins. Co. v. State, Dept. of Ins., 569 So.2d 1325, 1327 (Fla. 1st DCA 1990) (absent any emergency, the agency should follow nonemergency procedure by announcing its intended action and "giving the adversely affected party a clear point of entry and the opportunity to elect formal or informal proceedings."); Florida Optometric Ass'n v. Department of Professional Regulation, Board of Opticianry, 567 So.2d 928, 935 (Fla. 1st DCA 1990) (a clear point of entry is "a clear opportunity to file a petition for formal proceedings"). As appellants point out, the letters effectively eliminate any option for the municipalities to elect the type of proceedings they wish to pursue, and instead mandate that a meeting serving as informal proceedings will be held unless the municipalities can file a "substantiated allegation" that 90 days have not elapsed since the due dates established by rule. Since the letters were not composed until more than 90 days after the due date this option is meaningless and a nullity. The letters therefore provide informal proceedings as the only option.
The letters do not set forth the procedure to be followed, as is required by Rule 28-5.111. In order to provide an adequate clear point of entry the notice does not have to track any particular language or recite statutory provisions verbatim, so long as it clearly informs the affected party of its rights and the time limits. Capital Copy Inc. v. University of Florida, 526 So.2d 988 (Fla. 1st DCA 1988); Lamar Advertising Co. v. Department of Transportation, 523 So.2d 712 (Fla. 1st DCA 1988). A properly noticed clear point of entry does not have to set forth the Commission's sanctions policy which will be employed. An agency is entitled to apply its evolving, non-rule policy without prior notice so long as the affected party has a clear point of entry to challenge the use of the policy, and any ultimate use by the agency is supported by competent substantial evidence. Health Care and Retirement Corp. of America, Inc. v. Department of Health and Rehabilitative Services, 559 So.2d 665 (Fla. 1st DCA 1990); St. Francis Hosp., Inc. v. Department of Health and Rehabilitative Services, 553 So.2d 1351 (Fla. 1st DCA 1989).
The policy behind the requirement of a clear point of entry is to assure that affected parties are not prejudiced by administrative action without being afforded an opportunity to pursue an available and adequate remedy. Lamar Advertising Co. v. Dept. of Transportation; Lewis Oil Co., Inc. v. Alachua County, 496 So.2d 184 (Fla. 1st DCA 1986). Notice of final agency action is intended to create a clear point of entry, not a trap for the unwary. SWS Partnership v. Florida Dept. of Corrections, 567 So.2d 1048 (Fla. 5th DCA 1990). Under Capeletti, "Until proceedings are had satisfying section 120.57, or an opportunity for them is clearly offered and *415 waived," the agency is without power to act. Without a clear point of entry the Commission was without authority to proceed to impose sanctions. See City of St. Cloud v. Department of Environmental Regulation, 490 So.2d 1356, 1358 (Fla. 5th DCA 1986), wherein the court stated (cites omitted):
Notice of agency action which does not inform the affected party of his right to request a hearing, and the time limits for doing so, is inadequate to provide a clear point of entry to the administrative process. An agency seeking to establish waiver based upon the passage of time following actions claimed as final must show that the party affected by such action has received notice sufficient to commence the running of the time period within which review must be sought. The notice must contain a statement concerning a right to a hearing, set forth a time limit for requesting a hearing, and refer to the applicable procedural rules of the agency.
We reverse the denial of Pembroke's and Village's request for section 120.57 hearings. In all other respects we affirm the decisions below.
WIGGINTON and MINER, JJ., concur.
NOTES
[1] With regard to the Village of Virginia Gardens, this assertion of diligent effort is thoroughly belied by the record. Its plan was over 6 months late; its response to the DCA notice of sanctions, due within 30 days, was never filed in complete form; and the items omitted from the plan and requested by the DCA were never provided. The plan was ultimately filed by the regional planning authority.
[2] To the extent that the Sept. 5, 1989 cover letter accompanying Pembroke's copy of the DCA's recommended sanctions could be regarded as notice of proposed agency action, it is entirely inadequate. The letter does not provide any of the requisite information and only gives a name and phone number to contact "If you have any questions ..."